[No. 519. August 24, 1892.]

## TERRITORY OF NEW MEXICO, APPELLEE, v. JESSE R. HICKS, APPELLANT.

CRIMINAL LAW—MURDER—APPEAL, MOTION TO DISMISS.—On a motion to dismiss an appeal from a conviction of murder, on the grounds that the appellant had failed to file a transcript of the record in the cause within ten days before the first day of the term of the court to which it was returnable, though appellant filed the record with the clerk on the first day of the term; and that it was a common law action, and should have been brought by writ of error,—Held: In cases where the appeal does not operate as a stay of proceedings, the transcript is not made out and forwarded to the appellate court unless on the application of the appellant. But in cases, as in the case at bar, where the appeal does operate as a stay of the proceedings, it is the duty of the district clerk, under section 2476, Compiled Laws, without any application on the part of appellant, to file with the clerk of the supreme court a transcript of the record without delay; and his failure to do so will not subject the appellant to a dismissal of his appeal. Neither section 2189, Compiled Laws, nor the act of 1891, in relation to appeals in equity cases and writs of error in common law cases, has any application to appeals in criminal cases.

ID.—VENUE, PROOF OF.—It is not necessary in a trial for murder that the venue be affirmatively proven, it is sufficient if the evidence incidentally given in connection with the facts in the case shows that the venue was properly laid, as in this case, where it appears from the evidence that the person alleged to have been murdered died in the county where the venue was laid. Comp. Laws, sec. 2460; State v. Dent, 3 Am. Crim. Rep. 421.

ID.—MOTION FOR NEW TRIAL, REQUISITES OF—EXCEPTIONS—WAIVER.— A new trial will not be granted, in such case, on the ground that the interpretation of the testimony and the argument of the counsel were incorrect, and prejudicial to defendant, and that at the time no exception was taken, because neither the defendant nor his counsel were aware of such incorrect interpretation, where the motion fails to set out the exact words of the witness and counsel, and the exact words used by the interpreter in interpreting them in the language in which they were so interpreted, so that the court below, or the appellate court, may pass intelligently upon the question to determine whether such interpretation was erroneous or not. In such case an objection is not sufficient; an exception must be taken; and a failure to except is a waiver of the objection.

ID.—MOTION IN ARREST OF JUDGMENT—SPECIAL TERM.—In view of section 552a, Compiled Laws, providing that, "when, in the discretion of the judge of any district court, a furtherance of justice may require it, a special term of the district court may be called," etc., and section 553, Compiled Laws, providing that, "Any special term of the district court that may be ordered under the provisions of this act shall be held for the purpose of hearing all causes that may be depending in said court, both civil and criminal," etc., a motion in arrest of judgment, on the ground that the term of the court at which the defendant was tried and convicted was a special term, and unauthorized by law, and the proceedings of the term coram non judice, will not be sustained.

ID.—CONFLICT OF TESTIMONY.—On appeal in a cause the appellate court will not weigh the evidence where there is a direct conflict.

APPEAL, from a judgment convicting defendant of murder in the third degree, from the Third Judicial District Court, Dona Ana County. Judgment affirmed.

The facts are stated in the opinion of the court.

A. B. FALL for appellant.

The court erred in overruling defendant's motion for instruction to the jury to return a verdict in his behalf. State v. Turpey, 59 Cal. 371; 51 Id. 319; Whar. Crim. Ev. 107.

As to setting aside a verdict, see United States v. Daubner, 17 Fed. Rep. 807.

The interpretation of the testimony in this case, together with the interpretation of the argument of counsel, was incorrect and prejudicial to defendant's case. Whar. Crim. Ev. 449, and cases cited; U. S. v. Garber, 2 Sum. 19; Schiner v. People, 23 Ill. 17.

Defendant's motion in arrest of judgment raises not only special but general jurisdictional questions, and rights are affected which could not be waived in any case, particularly in one of this character. 25 Pac. Rep. 294; Wyoming Territory v. Price, 1 Wy. 168; Spencer v. Com. of Va., 12 S. E. Rep. 10, 979.

If the legislature can delegate to a judge the authority to call a special term, as attempted to be done by sections 552, 553, Compiled Laws, 1884, it can delegate to the same judge the power to fix both time and place for each of its regular terms; and yet by the organic act and subsequent acts, the power is given to the legislature alone to fix the time and place of holding court in the different counties. Winters v. Hughes, 25 Pac. Rep. (Utah) 759; Loeb v. Matthews, 37 Ind.; Cooley's Const. Lim. 139–155.

If the sections of the laws referred to supra, and under which this call was made are unconstitutional or in conflict with the organic act and subsequent acts of congress, then all the acts of this so-called special term of court in Dona Ana county were coram non judice, in fact an absolute nullity. Smith v. Rice, 11 Mass.; 3 Vermont, 114; 9 Cal. 173; Freem. on Judgments, 121.

If the legislature had power to enact laws providing for a special term of court, then this court has only special powers, as conferred by statutes, and must, in all its proceedings be governed by the statutes, as would a court of special or limited jurisdiction, and no presumption as to the regularity of its proceedings will be entertained. Freem. on Judgments, 123; 18 Wall. 350; 54 Tex. 154; Cooley's Const. Lim. 407; 55 Cal. 212; 5 Mass. 434; 10 Wend. 590; 20 Pac. Rep. 842; 8 Ore. 317; Suth. Stat. Con., secs. 391, 454. See, also, Suth. Stat. Con., sec. 121, pp. 448, 449; Kelly v. State, 34 Ohio St. 239; 5 Mass. 434; 2 Yeates, 493; 9 Harris, 147; Buck v. State, 38 Ohio St. 664; 11 S. E. Rep. 665; 1 Neb. 397; 3 Fed. Rep. 283; Thompson & Merriam on Juries, 79; Suth. Stat. Con., secs. 391, 394, 395, 454.

If, according to the decision of the court below, section 23 of the laws of 1891 was unconstitutional, section 555, Compiled Laws, not having been followed

in the selection of the jury, the term being a special term, necessitating the strict observance of statutory requirements to obtain jurisdiction and render its acts legal,—the twelve men acting as a jury were not a jury, the court without jurisdiction, the verdict a nullity, and the sentence without authority of law. Cox v. People, 19 Hun (N. Y.), 430; 80 N. Y. 500; State v. Judges Third City Court, 2 So. Rep. 786; 49 N. W. Rep. 174; 92 Ill. 187; 100 U. S. 339.

As to following statutes in drawing juries see 3 Vt. 114; 80 V.a. 551; State v. Jones, 97 N. C. 469; Wyers v. State, 2 S. W. Rep. 722; 81 Pa. St. 349; 63 N. Y. 36; Loeb v. Matthews, 37 Ind. See, also, State v. Deslonde, 27 La. Ann. 71; Cockey v. Cole, 28 Md.; 62 Mo. 585.

When the expression "term of court" is used in a statute, a regular, not a special, term is always meant. Thompkins v. Clackamas Co., 4 Pac. Rep. 1210.

EDWARD L. BARTLETT, solicitor general, for appellee.

The proof of place where Martin died was all that was necessary. This was in accordance with the statute governing such cases. Sec. 2460, Comp. Laws, 1884, p. 1146; State v. Dent, 3 Am. Crim. Rep., p. 421.

The special term at which defendant was tried was a legal term. Organic Act, p. 63, Comp. Laws, sec. 1874; Id., secs. 552, 552a, 553. See, also, Organic Act, sec. 1865, Comp. Laws, p. 62; Organic Act, sec. 1915, Comp. Laws, p. 71.

The proviso in section 23 of the Act of February 26, 1891, is invalid, and void. It must be strictly construed, and takes no case out of the enacting clause which does not fall fully within its terms. Dugan v. Bridge Co., 27 Pa. St. 303; Intoxicating Liquor Cases,

25 Kan. 524; U. S. v. Dickson, 15 Pet. (U. S.) 141–165; Epps v. Epps, 17 Ill. App. 196; Suth. on Stat. Con., sec. 223, pp. 297 and 298.

The present jury law of 1891 was prepared in view of the decision of this court in Territory v. Luciano Baca et al., at the present term, construing the jury law of 1889, and holding it to be special legislation and void under the act of congress of July 30, 1886. See McCarthy v. Commonwealth, 2 Atlantic Rep. (Pa.) 423; State v. Inhabitants of Bloomfield, 2 Atlantic Rep. (N. J.) 249; State ex rel. Randolph v. Wood, 7 Id. 286, and cases cited.

Judgment can only be arrested for such errors as are apparent on the face of the record, or for some matter which ought to appear of record but does not. 12 Am. & Eng. Encyclopedia of Law, p. 147b, and cases cited; 1 Bish. Crim. Proc., sec. 1282.

As to what constitutes the "record," see: U. S. v. Barnhart, 17 Fed. Rep. 581; Warren v. Flagg, 2 Pick. (Mass.) 448; Bouv. Law Dict., title "Record," Black's Law Dict., title "Record;" 1 Bish. Crim. Proc., secs. 1341–1347.

The writ of error only reaches errors apparent on the face of the record, not extending to preliminary steps. 1 Bish. Crim. Proc., sec. 1368.

"The supreme court shall examine the record, and on the facts therein contained, alone, shall award a new trial, reverse or affirm the judgment." Comp. Laws, sec. 2190; Laws, 1889, pp. 3, 4.

Objections to the drawing and impaneling of a trial jury can not for the first time be raised on a motion for a new trial. People v. Coffman, 24 Cal. 230–235.

Any matter in abatement, or defect in summoning or impaneling the grand or petit jury can not be reached by motion in arrest. Stone v. People, 2 Scam. (Ill.) 326; Hanley v. State, 6 Ohio, 399; Veatch v. State, 56 Ind. 584; 1 Bish. Crim. Proc., sec. 1285.

"If the defendant pleads he admits the jurisdiction." The objection to the jurisdiction must be first raised in the court below or it can not be considered in this court, unless the want of power to hear and determine is clearly apparent upon the record. Winters v. Hughes, 24 Pac. Rep. 760; Candill v. Tharp, 1 G. Green, 95; Starr v. Wilson, 1 Morris (Iowa), 577.

OPINION ON MOTION TO DISMISS.

LEE, J.—This cause is first presented to us on motion to dismiss. The territory, by E. L. Bartlett, solicitor general, produces the record in this cause, and moves the court to dismiss the appeal from the judgment of the court below, upon the grounds that said appellant has failed to file a transcript of the record and proceedings in this cause within ten days before the first day of the present term of this court, though appellant filed said record with the clerk on the first day of the term; that it is a common law action, and should have been brought into this court by a writ of error. Section 2469 of the Compiled Laws provides that in all cases of final judgment rendered upon an indictment an appeal to the supreme court shall be allowed if appealed from during the term at which said indictment was rendered. Section 2476 provides that when an appeal shall be taken which operates as a stay of proceedings it shall be the duty of the clerk of the district court to make out a transcript of the record of the cause, and to certify and return the same to the office of the clerk of the supreme court without delay. Section 2477 provides that when an appeal does not operate as a stay of proceedings, such transcript shall be made out, ratified, and returned on application of the appellant. It will be noticed that when an appeal operates as a stay of proceedings it becomes the duty of the clerk of the district court without delay to make

MURDER: appeal, motion to dismiss.

out the transcript, and forward the same to the clerk of the supreme court. In cases where the appeal does not operate as a stay of proceedings the transcript is not made out and forwarded to the supreme court unless an application for the same is made by the appellant. This case being one where the appeal operates as a stay of proceedings, it was the duty of the district clerk, without any application or motion on the part of the appellant, to send a transcript of the record, as it appeared in his office, to the clerk of the supreme court; and his failure to do so in the ten days before the commencement of the term of the supreme court to which it would be returnable should not visit upon the appellant the consequence of a dismissal of his appeal. This view is fully sustained under statutes substantially the same as ours, and in the case of State v. Pratt, 20 Iowa, 268, that court held that, though the appellant failed to file the transcript, the state might file the same, and it would be the duty of the supreme court to examine the record, and upon it to render such judgment as the law might demand; the defendant in that state, as here, not being required to assign or join in error. Section 2189 of the Compiled Laws was not intended to, and does not, apply to appeals in criminal cases; nor does the act of the legislature of 1891, in regard to appeals in equity cases and writs of error in common law cases, have any application to appeals in criminal cases. The motion to dismiss the appeal will be overruled.

## OPINION ON THE MERITS.

The record shows that the defendant, Jesse R. Hicks, together with one A. Green Hicks, his son, was indicted for the murder of one Edward Martin, in the district court in and for the county of Dona Ana, at a special term of said court, held in said county during

the month of May, 1892. A severance having been granted, the defendant was put upon trial under said indictment, convicted of murder in the third degree, and sentenced to imprisonment in the penitentiary for a period of seven years. After the evidence was fully heard, the defendant, by his counsel, moved the court to instruct the jury to find a verdict for the defendant, upon the ground that the venue had not been .proven, which motion was overruled by the court. The ruling of the court in this particular is assigned as one of the errors. It is not necessary that the venue be affirm-

VENUE, proof of.    atively proven, if evidence was inciden-
tally given in connection with the facts in the case sufficient to show that the venue was .properly laid. The record shows that Edward Martin, the per son alleged to have been killed, died at the house of David McDonald, in the county of Dona Ana, in the territory of New Mexico. Under the provisions of the statute it is sufficient to establish the venue to prove that the person charged to have been murdered died in the county where the venue is laid. Comp. Laws, N. M., sec. 2460;' State v. Dent, 3 Am. Crim. R. 421. In his motion for a new trial the defendant sets up, as one of the grounds for granting the same, that the interpretation of the testimony in the case, as well as

MOTION for new    the interpretation of the argument of the
trial, requisites    counsel for the defendant, was in many
of: exceptions:
waiver.    points incorrect, and prejudicial to defend-
ant's case, and that at the time no exception was taken, for the reason that neither the defendant nor his counsel was aware of such wrongful and incorrect interpretation. The rule that the rulings on the trial not effectually questioned by specific objections are waived, is one of very wide scope. It is not sufficient to object; the objection must be supplemented by an exception. The failure to except is a waiver of the

objection. Nor is it always sufficient to object and except, for, as a general rule, an opportunity for review must be given to the trial court by the appropriate motion. A general rule, as declared in many cases, is that a breach of duty on the part of an officer of the court is not available as error for the reversal of a judgment, unless it was of such a character as to authorize the inference or presumption that it injured the complaining party; and this would have to be made to appear in the motion by specific allegations. Where objection is made that words testified to by a witness, or used by counsel in argument to a jury in one language, have been wrongfully and incorrectly interpreted in another language, so as to convey a wrong and erroneous meaning thereto, it would be necessary for the party charging the misinterpretation to set out the exact words as testified by the witness or used by the counsel in the language in which they were so used, and the exact words used by the interpreter in interpreting them in the language in which they were so interpreted, so that the court below, or the appellate court, might intelligently pass upon the question to determine whether or not such interpretation was erroneous; and, if so, whether it was to the prejudice of the defendant. General objections would not be sufficient. In this case there were no exceptions taken setting up the words charged to have been erroneously interpreted, the reason given being that the defendant and his counsel were ignorant of such erroneous interpretation at the time; but, if that were deemed sufficient to excuse the exception, it would be no reason that the words should not be set out in the motion for a new trial, if they expected the court to pass upon them; and, not setting them out, the court very properly overruled the motion.

A question is raised by counsel for the defendant in a motion for arrest of judgment, that, as the term of

the court at which the defendant was tried and convicted was a special term, it was unauthorized by law, and the proceedings of the term were coram non judice. In support of this position it is contended that an act establishing the courts for the territory of New Mexico, passed in 1850, provided that a district court shall be held in each district of the territory by one of the justices of the supreme court, at such time and place as may be prescribed by law, and limited the courts of the territory to such terms as the time for holding had been fixed by the legislature. But, even if this were correct, in 1858 an act of congress was passed, which provides "that the judges of the supreme court of each territory are authorized to hold court within their respective districts, in the counties wherein, by the laws of the territory, courts have been or may be established, for the purpose of hearing and determining all matters and causes except those in which the United States is a party; but the expense of holding such courts shall be paid by the territory, or by the counties in which the courts are held, and the United States shall in no case be chargeable therewith." Rev. Stat., sec. 1874. And section 1915 of the organic act, approved August 16, 1856, authorizes the judges of the supreme court in the territories of New Mexico and Arizona to fix and appoint the several times and places of holding the courts in their respective districts. If the former act of 1850 was intended to limit the time of holding the terms of the district court to regular terms established by the legislature, such was clearly changed by the subsequent acts of congress, authorizing the judges to fix the time of holding courts, but which would be inoperative were it not for the act of the legislature which provided the means by which the courts were enabled to hold such terms. The construction given by the supreme court of the United States in the case

*[margin note: MOTION in arrest of judgment: special term.]*

of Hornbuckle v. Toombs, 18 Wall. 648, of the powers of the territorial legislature under the organic act, is about as that exercised by a state legislature. The court, in that opinion, says: "Whenever congress has proceeded to organize a government for any of the territories, it has merely instituted a general system of courts therefor, and has committed to the territorial assembly full power, subject to a few specified or implied conditions of supplying all details of legislation necessary to put the system into operation, even to defining of the jurisdiction of the several courts. As a general thing, subject to the general scheme of local government chalked out by the organic act, and such special provisions as are contained therein, the local legislature has been intrusted with the enactment of the entire system of municipal law, subject, also, however, to the right of congress to revise, alter, and revoke at its discretion. The powers thus exercised by the territorial legislature are nearly as extensive as those exercised by any state legislature, and the jurisdiction of the territorial courts is collectively coextensive with, and correspondent to, that of the state courts—a very different jurisdiction from that exercised by the circuit and district courts of the United States. In fine, the territorial, like the state courts, are invested with plenary municipal jurisdiction." In the exercise of this power the legislature of the territory of New Mexico has made provisions for special terms of court, among which is the following: "The respective district judges are hereby authorized, at any time, to hold special terms of the district court in any county of their judicial districts when a term thereof in said county may have failed; provided, said special term shall not conflict with a term of said district court in any other county in the same judicial district; said terms to be called in the same manner now provided by law for the holding of special terms of the district courts in this territory."

Comp. Laws, sec. 552. "When, in the discretion of the judge of any district court, a furtherance of justice may require it, a special term of the district court may be called in the same manner now provided by law for calling special terms; and any business at the time pending in said court, or that may come up before it in the usual course of business of the court, may be taken up and acted upon and disposed of in the same manner as at a regular term of said court." Comp. Laws, sec. 552a. "Any special term of the district court that may be ordered under the provisions of this act shall be held for the purpose of hearing all causes that may be depending in said court, both civil and criminal, and may continue in session the same length of time that is allotted to the regular term of court for such county, and no longer." Comp. Laws, sec. 553. Other necessary provisions to give legal force and effect to such special terms are also provided by statutes of the territory, and we can see no reason why terms so held should not be of like legal effect with those where the time of holding has been fixed by statute.

It is contended, also, that if we should hold legal that term of court at which the conviction of the defendant took place, yet the trial was void for the reason that the jury thereof was not impaneled in accordance with the provisions of the statute. This question involves the construction of sections 23, 24, and 25 of the jury act of 1891, which is entitled, "An act to define the qualifications and regulate the drawing of jurors, approved February 26, 1891." Section 23 is as follows: "In the district court for each county in the territory, when, in the opinion of the judge thereof, it shall be necessary to summon juries, the grand jury shall have twenty-one members, of whom the concurrence of not less than twelve shall be necessary to the finding of any indictment; and the panel of the petit jurors shall consist of twenty-four members. The

qualifications and manner of selecting and drawing such jurors shall be as provided by the law of 1887, chapter 51, but they shall be selected and drawn from the body of the county for which the court is held: provided, that this section shall not apply after August 1, 1891, except for special terms of court." Section 24 makes the same provisions for jurors drawn to try cases on the United States side of the court, and each section contains the following limitation: "Provided, that this section shall not apply after August 1, 1891, except for special terms." But neither section provides in what contingency the exception shall operate, but we find it in section 25, which reads as follows: "At any term of any district court of either class, if jurors have not been selected for said term as required by this act, it shall be the duty of the court forthwith to proceed to the selection and summoning of such jurors in such manner as provided by the law of 1887 to meet such contingencies: provided, that this section shall not apply after August 1, 1891, except for special terms." Therefore, by the plain and positive terms of this act, after August 1, 1891, the only contingency in which a jury is authorized by the act to be drawn as provided by chapter 51 of the law of 1887 is at a special term, either of the United States or territorial court, where jurors have not been selected for said term as required by the present act of 1891. The legal status of a jury thus drawn it is not necessary for us to determine in this case, as the jury at this term, though a special term, had been previously drawn in accordance with the requirements of the act of 1891. When the terms of the statute are plain and positive, they require no construction by the court. The court will simply follow the letter of the statute, but, if a a construction is necessary, it is the duty of the court to construe the statute so as to give it an effect. It is also the duty of the court to give it such a construc-

tion as would make it harmonious in all its parts, if
that can be done. In the view that we have taken of the
act, full force and effect is given to every section, and
each part is harmonious with the whole, which condi-
tion would be reversed if we were to construe the
statute as contended by the counsel for the defendant.
But, even if we were to adopt the construction con-
tended for by the counsel for the defendant, it would
be unavailing to him, as it has been held by the supreme
court of the United States that by pleading not guilty
to an indictment, and going to trial without objection
to the jury, as was done in this case, any objection is
waived, although it may be based on the constitution-
ality of the law under which the jury was selected. U.
S. v. Gale, 109 U. S. 65.

In regard to the contention that the verdict is not
sustained by the weight of the evidence, it has been
held in a very great number of cases that an appellate
CONFLICT of    tribunal will not weigh the evidence in a
testimony.    case where there is a direct conflict, but
will accept and act upon that which the court and jury
trying the case deemed most trustworthy. The cases
in which a judgment has been reversed upon the ground
that the verdict is not sustained by the evidence are
rare. Many appellate courts refuse to consider such a
case at all, the theory being that the court and jury
who saw the witnesses and heard them testify were in
a better position to determine the weight that should
be given to their evidence than are the judges of the
appellate court, who have simply the notes of the evi-
dence taken upon the trial. The wisdom of the Roman
rule that witnesses are to be weighed, and not counted,
has peculiar application to this case. The witnesses
for the prosecution testified to the effect that the de-
fendant shot the deceased, Martin. One of the wit-
nesses, Mary A. McDonald, testified that she saw the

defendant raise the gun, point it toward the deceased, heard the report, saw Martin fall, heard him cry out. That she ran to him. When she got to him, Martin said: "Mother, pick me up. Take me to the house. Old man Hicks has shot me." That when the shot was fired she saw old man Hicks standing near a rock wall. A. Green Hicks was at one side of him, and a one-eyed man on the other side. That she knew A. Green Hicks as well as she knew anybody. On the part of the defense, A. Green Hicks, a son of the defendant, and jointly indicted with him for the murder of Martin, testified that he shot and killed the deceased, Martin, and in this he is corroborated by other witnesses on the part of the defense, viz., the man who was there present, and other members of the Hicks family, whereby arose a direct conflict in the testimony adduced on the trial, which it was the particular province of the jury to determine. When a person confesses or admits that he committed a crime, it is often entitled to considerable weight as being an admission against his interest; but this presumption may be overcome by showing that the witness had a strong motive to testify as he did, though not in accordance with the truth. The jury should take into consideration all the facts and circumstances in the case and they may have thought that A. Green Hicks testified that he shot and killed the deceased, in the manner and under the circumstances stated in his testimony to save his aged father from the awful consequences of the crime for which he was being tried. In any event, it was for the jury to determine whom they would believe and whom they would disbelieve; and where the jury has passed upon the testimony in a fair and impartial trial, this court will not disturb the verdict. Finding no error in the record which would authorize an interference by this court, the judgment of the court below will be affirmed.

O'BRIEN, C. J., and SEEDS and FREEMAN, JJ., concur.