165 P.2d 812

### STATE v. TALAMANTE.
### No. 4911.

Supreme Court of New Mexico.

Jan. 30, 1946.

Joseph M. Montoya and Samuel Z. Montoya, both of Santa Fe, for appellant.

C. C. McCulloh, Atty. Gen., and Robert W. Ward, Asst. Atty. Gen., for appellee.

BRICE, Justice.

From a judgment imposing a sentence of death by electrocution, following a charge and conviction of murder in the first degree, the appellant (defendant) has appealed.

The two errors assigned are, (1) that the appellant was deprived of his constitutional right to a trial by an impartial jury; and (2) that he was deprived of the right to cross-examine the only witness who testified to having seen the alleged shooting of the deceased (defendant's wife) regarding his hostility toward defendant.

Raised for the first time in this court, it is contended by defendant that the jury was prejudiced against him by reason of which he was deprived of his constitutional right to a trial by an impartial jury. In support of this contention the appellant cites the record as follows:

Minutes showing impaneling and swearing of petit jury, the calling of special venire and reasons for discharging previous venire, to-wit: "At the regular fall term of the District Court for the First Judicial District within and for McKinley County, the district judge, William J. Barker, being present, a duly qualified jury was duly empaneled in accordance with the law. The said jury was sworn and were in the court room; that before the petit jury was called a shooting occurred in the court room, the shots apparently directed at Pete Talamante by one Lucy Ruiz; and after said shooting took place the district attorney joined by counsel for the defendant, by reason of said shooting, challenged the entire panel for cause, and the court thereupon dismissed the entire panel giving his reasons therefor. Later in the day the court called a special venire for the fall term and in the usual course a

petit jury was selected four days later, on to-wit, the 24th day of November, 1944, to try the Talamante case."

There does not appear in the record the proceedings to qualify the jurors, including the voir dire examination.

 No objection, so far as the record shows, was made to any juror, or to the panel as a whole, or to any action of the court in connection with the impaneling of the second jury. It was accepted by the defendant, and there is not the slightest evidence in the record that would indicate the jury was not a fair and impartial one. If in fact the shooting that occurred in the court room affected the entire citizenship of McKinley County so that an impartial jury could not have been secured, the defendant should have raised the question and have supported the contention in the district court by evidence indicating that fact. Substantially the same question was decided adversely to the defendant in State v. Johnson, 37 N.M. 280, 21 P.2d 813, 819, 89 A.L.R. 1368. Johnson, a negro, was convicted of having murdered a young white woman. The evidence established that the victim had been raped by her assailant. This court stated:

"In oral argument, however, counsel for defense submits with great earnestness that to have brought his client to trial in early December, 1931, so close in point of time, upon the commission of a crime of the peculiar atrocity of this one, and in the very city where lay the scene of its commission, rendered it impossible for the defendant to have received a fair trial in the larger and truer meaning of that phrase. He argues that, no matter how damning or incriminating the evidence, a defendant asserting his innocence is entitled to trial by a jury selected in a vicinage free from the hot blood inevitably arising in a community which is the scene of such a crime.

"The record before us furnishes no basis for this argument. It discloses no motion for change of venue. Counsel seeks to explain his reason for not filing one. But, with a record before us barren of any hint or suggestion that the occasion for a change of venue existed or that any explanation of the failure to move for it was ever called to the attention of the trial court, it must be obvious to counsel that, under well-settled principles, we are in no position to consider the matter. The argument is all outside the record. Necessarily, cases must be decided in this court upon the record made below. * * *"

There is nothing in the record remotely suggesting that the jury was not a fair and impartial one, and we are not at liberty to so assume.

The second question is more difficult. The only eyewitness to the killing, other than the defendant, was one Jesus Angel who lived a short distance from the deceased's home. The witness' testimony regarding the killing of the deceased was substantially as follows:

"I lived at 1100 West Warren on the night of May 3, 1944. At about nine

o'clock that evening I was resting or sleeping. My wife woke me and said she had heard something like a shot outside. When I woke I heard another shot. My wife turned on the light on the porch. I got up and stood in the door and saw the deceased Antonia Talamante, fall, and I saw the defendant Pete Talamante right by her side. The light from the porch fell upon both of them. The defendant had a revolver in his hand and he shot again in the direction of the deceased, who at the time was lying on the ground. I have known Talamante three years. I sent my little boy to call the police. I never went outside to aid her. I sat on the bed again. I did not see what happened to the defendant Talamante. I saw the ambulance arrive and saw them pick up Antonia Talamante who was still complaining. I heard two shots fired, about five feet from my door."

On cross-examination the following appears in the record:

"Q. Have you ever had any difficulties with the defendant? A. No, sir.

"Q. Never any difficulties at all? A. No, sir.

"Q. Your wife used to be a friend of Pedro Talamante's did she not?

"Mr. Carmody: Objection, if the Court please, no evidence here regarding this witness's wife, nor has it any bearing whatsoever on this case. I see no materiality whatsoever as to anything between this witness's wife and the defendant.

"Court: Objection sustained.

"Mr. Atkins: Exception, if the Court please."

It is the sustaining of this objection to the question "Your wife used to be a friend of Pedro Talamante did she not?" which defendant asserts is error.

■ In a case involving the death penalty the trial court should be particularly careful in ruling out questions the answers to which may prove bias or prejudice on the part of so material a witness. No doubt defendant's counsel should have stated the purpose of the cross-examination, but we are of the opinion that this was supplied by the objection of the district attorney, who apparently had no difficulty in comprehending its purpose. His theory was that there was "no materiality whatsoever *as to anything between this witness's wife and the defendant.*" It would seem that the court was apprised by this statement that the intention was to show some relation between the witness and Talamante's wife, from which it might be inferred that the witness was unfriendly toward the defendant, and that the district attorney knew it. The effect of the ruling was to hold that "anything between this witness's wife and the defendant," irrespective of what the relationship might be, was immaterial. While the extent to which cross-examination may be allowed is largely within the discretion of the trial court, State v. Gilbert, 37 N.M. 435, 24 P.2d 280, it is nevertheless a valuable right and the discretion of the court is a judicial one; and the right cannot be so restricted as to wholly deprive a party of the opportunity to test the credibility of

a witness. Camp v. People, 84 Colo. 403, 270 P. 869; State v. Ford, 286 Mo. 624, 228 S.W. 480. It is said that the largest possible scope should be given to evidence attempted to be procured by cross-examination, the matter being left chiefly to the discretion of the trial court. 3 Wigmore on Evidence, 3d Ed., 944. The same author states: "The range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place. Exact concrete rules are almost impossible to formulate, and where possible are usually undesirable. In general, these circumstances should have some clearly apparent force, as tested by experience of human nature, or, as it is usually put, they should not be too remote. "Among the commoner sorts of circumstances are all those involving some intimate family relationship to one of the parties by blood or marriage or illicit intercourse, or some such relationship to a person, other than a party, who is involved on one or the other side of the litigation, or is otherwise prejudiced for or against one of the parties. * * *" See Henderson v. Dreyfus, 26 N.M. 541, 569, 191 P. 442.

We are of the opinion that the trial court erred in sustaining the district attorney's objection to the question stated.

 The cause should be reversed unless we are satisfied that the error of the court did not prejudice the defense. It so happens that Angel's damaging testimony was corroborated by the testimony of the defendant himself. Defendant testified that just prior to the shooting he was served with process in a divorce suit. He then went to the house where his wife lived. He stated, "I asked her (his wife) what she wanted with those papers. Mrs. Jacques (a neighbor) grabbed me by the neck and I lost control and did not know what I was doing. I had been drinking since the 23rd of April. I had no intent to injure my wife."

On cross-examination he testified as follows: "Mrs. Jacques got me from behind with her arm around my neck. My wife was standing right in front of me. I did not see Joe Reyes (whom the defendant shot). I recall I was standing alone when I got control of myself and I was looking for the door and could not find it. I turned to the right and saw the big light at the porch (Angel's) and went towards the light. Then I saw the woman (his wife) that was running down the street. That was when I fired the shot because I wanted to stop and speak to her.

"Q. But you do remember shooting her? A. I recall that I did shoot.

"Q. Do you remember when she was lying on the ground and you pumped the bullet into her? A. Yes, I do remember.

"Q. You didn't think you would speak to her after you shot her to kill her, did you? A. She wasn't dead.

"Q. But you hoped to kill her, didn't you, then? A. No, sir, if I had hoped to kill her I could have killed her right there,

"Q. Where would you have shot her if you were going to kill her? A. I didn't have no intentions of killing her.

"Q. But where, if you had, would you have shot her? A. My intentions were never that way, and it isn't my intention.

"Q. But you stated, Talamante, that if you wanted to kill her you would have. If you had wanted to, where would you have shot her? A. I don't know, because I didn't have the intentions of killing anyone.

"Q. You stated on this stand that if you had wanted to, you could have killed. A. Isn't it true that if I was lying on the floor and you wanted to kill me, you could kill me right there?

"Q. Where would you shoot a person? A. You can die from mostly any wound in the body.

"Q. Where did you intend to shoot your wife? A. I want her to, I just wanted her to stop and wanted to talk to her.

* * * * * *

"Q. Your wife was stopped when she was on the ground there in front of the house, wasn't she? A. She was because she was lying down.

"Q. You could have talked to her then? A. I did speak to her.

"Q. And yet you fired a bullet into her body *just like that,* didn't you? (Our emphasis.) A. No, sir.

"Q. Didn't you admit that a moment ago? A. Yes, *but not that way.*" (Our emphasis.)

The substance of the damaging testimony of the witness Jesus Angel was that the defendant fired a shot toward the deceased while she was lying on the ground. He testified to no material fact regarding the shooting that was not admitted by the defendant himself, including the shooting at the deceased while she was lying at his feet upon the ground.

The object of the attempted cross-examination of Angel, we have assumed, was to show that he was unfriendly to the defendant; and if unfriendly the jury could take this into consideration in adjudging the weight to be given his testimony. It is admitted that defendant killed the deceased; that he fired the last shot at or toward her exactly as the witness Angel testified. Under such state of facts, we are of the opinion that the error of the trial court did not prejudice the defense.

The judgment of the district court is affirmed. It is so ordered.

MABRY, C. J., and SADLER, BICKLEY, and LUJAN, JJ., concur.