294 P.2d 276

STATE of New Mexico, Plaintiff-Appellee,

v.

Federico LOPEZ, Defendant-Appellant.

No. 6006.

Supreme Court of New Mexico.

Feb. 3, 1956.

Dean S. Zinn, Frank B. Zinn, Santa Fe, for appellant.

Richard H. Robinson, Atty. Gen., Santiago E. Campos and Paul L. Billhymer, Asst. Attys. Gen., for appellee.

McGHEE, Justice.

The defendant, appellant, seeks a reversal of his conviction for assault with a deadly weapon, to-wit, a pistol, on Filiberto T. Chavez. The case is submitted here upon two points: The first, claiming improper conduct and remarks upon the part of the district attorney which, defendant says, were bound to have influenced the jury and prejudiced his case so as to deny him a fair and impartial trial; and second, that the trial court unduly limited his cross examination of a state's witness as to his intended social activity on the night of the alleged offense.

Some hours before the shooting in this case the prosecuting witness and a companion were drinking beer in a bar just north of Espanola, New Mexico, owned by Ernesto Lopez, a brother of the defendant, and Adelaido Archuleta, when, as Chavez, the prosecuting witness, claims, Archuleta, who was tending bar, informed them he was a candidate for the Democratic nomination for sheriff of Rio Arriba County, and stated his brother, Carlos Manzanares and others were holding a meeting in a room behind the bar and invited Chavez and his companion to join it. They did so but were shortly ejected by Ernesto Lopez after Chavez had insulted Manzanares by taking undue liberties with his hat. In addition, Manzanares had slapped Chavez. Here it may be stated Ernesto Lopez was the then Democratic County Chairman of Rio Arriba County and the others present at the meeting were men of prominence in such party.

Chavez and his companion left the vicinity and returned in a few hours accompanied by at least two others; immediately upon their arrival the shooting occurred outside the bar.

We have carefully read the record of this trial which lasted for approximately one week and we are unable to agree with the contention of defendant that the questions or one or two side-bar remarks of the district attorney created such an atmosphere that the case of the defendant was prejudiced, especially in view of the prompt action of the trial court in ruling favorably upon objections made by the defendant and its admonition to the jury, in effect, that

they were to rely only upon the evidence in arriving at a verdict. See Olguin v. Thygesen, 1943, 47 N.M. 377, 143 P.2d 585.

█ One of the defendant's claims of error in that regard is based on the fact it was brought out on cross examination of Manzanares (a citizen of considerable prominence in Rio Arriba County) that he was allied with Ernesto Lopez in a faction of the Democratic party of Rio Arriba County, but also that he was a close personal and political friend of an uncle of the prosecuting witness. It was also brought out that Manzanares had at one time represented Ernesto Lopez on a criminal charge at Chama, New Mexico. We are unable to agree the eliciting of such facts was so prejudicial that a mistrial was required.

The district attorney was apparently fearful politics might play a part in the case and before trial he filed a motion for a change of venue from Rio Arriba County, principally on the ground that Ernesto Lopez, the defendant's brother, was a man of great personal and political influence in the county; however, the defendant answered with a ringing response denying the trial might be influenced by politics, saying in part:

"Moreover, such charges amount to an unwarranted and unjustified attack and reflection upon the caliber, intelligence and integrity of jurors of Rio Arriba County.

\* \* \* \* \* \*

"Assuming, but not conceding, that the findings of the jury will be based solely upon political considerations and party affiliations, as the District Attorney would have the Court believe, the jury panel drawn by the Court on the first day of the term is so evenly divided that the alleged political influences are completely nullified as evidenced by the following tabulation of the voting registrations of the panel members:

Republican .............. 17
Democrat ............... 16
Independent ............. 1
Not Registered .......... 2."

If only a small part of the defendant's opinion of the jury panel was correct, the statements of which he now complains could not have influenced the verdict. On the contrary, the weakness of his claim he shot in self-defense must have been the controlling factor.

The first point must be ruled against the defendant.

█ We will now consider the error claimed under the second point. After the prosecuting witness and his companion, Leopoldo E. Martinez, had been thrown out of the room back of the bar, they drove around a while and then went to Eddie's Bar in Riverside, New Mexico, where they understood there would be a dance. Both Chavez and Martinez were married and their wives were at home. Martinez testified as a witness for the state and we quote from the record as to a part of his cross examination:

"Q. How long have you been married? A. Five years.

"Q. Have any children? A. Yes, sir.

"Q. How many children do you have? A. Two.

"Q. Where was your wife on the night all this took place? A. At Los Alamos.

"Q. In your home? A. As far as I know.

"Mr. Prince (District Attorney): I object to this line of testimony, I don't see where it has any bearing on the fact that this man got shot in the head.

"Court: Sustained.

\*    \*    \*    \*    \*    \*

"Q. Now, it was then that you went to the Meadows that you decided to go to Eddie's Bar to investigate a dance over there, isn't that right? A. Yes.

"Q. And you and Filiberto wanted to go dancing that night? A. We wanted to go to the dance.

"Q. You did not have dates with you at that time, did you? A. We were alone.

"Q. You—who were you planning to dance with if you went to the dance?

"Mr. Prince: I think this is irrelevant, it has nothing to do with the fact that Filiberto Chavez was shot.

"Court: Sustained.

"Mr. Dean Zinn: I would like to say this—the reason we are going into that, it does affect the credibility of this witness.

"Mr. Prince: I object to the counsel testifying before the jury.

"Court: It may affect his morality but I don't know that it affects his credibility, I think it is more in the nature of argument—sustained.

"Mr. Dean Zinn: Exception."

The defendant strongly contends he should have been allowed an answer to the last question and also to pursue the question further, saying:

"Surely, making the rounds of the bars and going to dance halls presumably to dance with other women while his wife was home constitutes 'general evidence of bad moral character,' and the Court below obviously recognized it and erroneously refused to permit the testimony to be elicited."

We do not believe the defendant was prejudiced by the action of the trial court in stopping the examination where it did. Defendant was allowed to show the witness was out without his wife, that he had gone to the dance hall with the intention of dancing, and if he did dance it would necessarily have been with some woman other than his wife. The effect of such conduct, or intended conduct, was then a matter for argument as the trial court observed.

We do not find any prejudicial error in the matters complained of by the defendant and the judgment must be affirmed.

It is so ordered.

COMPTON, C. J., SADLER, J., and E. T. HENSLEY, Jr., D. J., concur.

LUJAN and KIKER, JJ., not participating.