435 P.2d 437

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Edward AULL and John Eubanks, a/k/a Jay Eubanks, Defendants-Appellants.**

**No. 8268.**

Supreme Court of New Mexico.

Oct. 16, 1967.

Rehearing Denied Nov. 15, 1967.

Boston E. Witt, Atty. Gen., Donald W. Miller, Edward R. Pearson, Asst. Attys. Gen., Santa Fe, for appellee.

Fred M. Calkins, Jr., Albuquerque, for appellant Aull.

Buchmiller & Gammill, Albuquerque, for appellant Eubanks.

## OPINION

BLYTHE, District Judge.

These appeals by two convicted burglars involve issues regarding change of venue, severance, search and seizure, voir dire examination of jurors, and remarks made during final arguments to the jury.

 Edward Aull and John Eubanks, the present defendants, and two others were jointly informed against for burglary on January 24, 1966, and on March 31, 1966, Aull filed his first change of venue motion, which merely asked that venue be removed from Bernalillo County. On April 5, 1966, he amended his motion to ask that venue be changed to a county other than the three counties of the Second Judicial District. The amended motion sought entirely different relief, i. e., change of venue to a different district, superseding the original motion, which, accordingly, became functus officio. Monarch Lumber Co. v. Haggard, 139 Mont. 105, 360 P.2d 794 (1961). We, therefore, consider only the amended motion. Section 21–5–3(A) (2) (c), N.M.S.A. 1953, provides for change of venue if a fair trial cannot be had in the county where the case is pending because of

public excitement or local prejudice. When a motion for change based upon that ground requests a change to a county outside the district, subsection (B) of § 21–5–3 limits the time within which such motion must be filed to the first day of the next regular or special term of court. The amended motion in this instance, which was based upon local prejudice, was filed after the first day of the term. It follows that it was not timely filed. Since the motion for change of venue was not timely filed, the fact that evidence was taken concerning whether local prejudices existed does not require a different result. A reviewing court's function is to correct an erroneous result, not to review questions which could not change the ultimate decision. Tevis v. McCrary, 75 N.M. 165, 402 P.2d 150 (1965); Wieneke v. Chalmers, 73 N.M. 8, 385 P.2d 65 (1963).

On June 2, 1966, new counsel for Eubanks moved orally in the alternative for a change of venue or a continuance, incorporating by reference the exhibits introduced at the hearing of April 14th on Aull's motion for change of venue. Eubanks' oral motion did not meet the requirements of § 21–5–3(A) (2), N.M.S.A.1953, as amended, that a party's motion for change of venue be supported by "an affidavit of himself, his agent or attorney, that he believes he cannot obtain a fair trial in the county in which the case is pending because" of the existence of one or more of the conditions listed in the statute, so it was properly denied for this reason, as well as for the reasons stated above with reference to Aull's motion.

In the first of two motions for severance, filed June 6, 1966, the ground was:

"That Edward Lee Aull has received such bias and notorious publicity as a result of his various hearings and statements alleged to have been made to the District Attorney's Office and replies from the District Attorney's office in the local press as to unduly prejudice the rights of the Defendant, John Eubanks."

On June 8, 1966, another motion for severance was filed by Eubanks, alleging:

"1. That there is currently being tried in the United States District Court in Albuquerque, New Mexico an action in which an allegation of fraud and arson has been interposed as a defense to an insurance claim.

"2. That one Edward Lee Aull, one of the Defendants herein, has received prominent and notorious publicity by reason of his alleged activities with reference to the aforesaid arson.

"3. That the defendant, Eubanks, has absolutely no connection with either that law suit or the crime of arson.

"4. That Defendant, Eubanks, by reason of being charged as a co-defendant with the Defendant Aull, is adversely affected in his defense by reason of the notoriety, publicity and reputation of Mr. Aull."

■ The general rule is that it is insufficient ground for severance "that other defendants have bad reputations, or have confessed to, or been convicted of, other crimes * * *." 23 C.J.S. Criminal Law § 935, p. 713, citing numerous cases.

■ However, Eubanks' present counsel, who did not participate in the trial, does not now urge the grounds stated in the motions. Instead, he argues that the evidence introduced in the trial of the case was directed mostly against the defendant Aull and that Eubanks was found guilty by association with Aull. His position is summarized in this quotation from the annotation in 70 A.L.R. 1171, 1185:

"Separate trials are properly granted where it appears that a defendant would be prejudiced on a joint trial by the reception of evidence which is not admissible against him, but which is competent as against his codefendant. But a refusal is justified when the jury is properly instructed concerning the application of the evidence and no prejudice has in fact resulted from trying the defendants jointly."

Eubanks relies heavily on State v. Turnbow, 67 N.M. 241, 354 P.2d 533, 89 A.L.R. 2d 461 (1960), where we reversed because the trial court's denial of a severance had the effect of denying the defendants, who were husband and wife, the benefit of a statute making one spouse incompetent to testify against the other in a criminal prosecution. Turnbow is clearly distinguishable.

■ In a long line of cases, collected in Turnbow, we have held that the granting of separate trials to jointly-charged defendants is, in New Mexico, a matter resting in the discretion of the trial court. Here, on the basis of facts disclosed at the time of the filing of the motions for severance, the trial court had a reasonable anticipation that the jury could properly weigh the testimony on the various issues as they arose, and we cannot say, even in retrospect, that this prophecy has not been realized, or that prejudice has in fact resulted from trying these defendants jointly, or that there has been an abuse of discretion.

Aull contends also that the trial court erred in denying his motion to suppress evidence seized from him at the time of his arrest, on the ground that the arrest and search were illegal. This necessitates a rather detailed review of the factual situation surrounding the arrest, search and seizure, as revealed by the testimony adduced at the hearing on the motion to suppress. State v. Deltenre, 77 N.M. 497, 424 P.2d 782 (1966). This consisted of the testimony of Albuquerque police officers John H. Bowdich, John R. McKnight and Francis A. Troup; Celicia Cruz, wife of one of the original co-defendants; and the defendant Aull. It may be summarized as follows:

Aull was apprehended in a car on a street in the City of Albuquerque about 3:00 a. m. in front of a house where, after responding to a neighbor's complaint about disturbing noises, investigating officers found a "peeled" safe in a pickup truck. At that time the officers did not know a burglary in fact had been committed, but

they later discovered that the safe had been taken in a burglary of the Singer Sewing Center in Albuquerque.

The neighbor had made three complaints to the police by telephone in the early morning hours of November 11, 1965, about loud pounding and hammering noises coming from a garage behind the house next door, at 7404 Sky Court Circle, N.E., in a residential area. Twice the officers drove by, but, seeing and hearing nothing, they drove on. Two police patrol cars responded to the third call, which was to the effect that five or six men were loading something heavy into a truck. One car, containing officers McKnight and Troup, went to the 7404 Sky Court Circle address. The second patrol car was occupied by Bowdich and Officer Tom Chappell, who had heard all three of the police radio calls regarding the disturbance but had not responded to the first two. As Bowdich and Chappell approached the Sky Court Circle address, they saw a red Chrysler automobile, driven by Aull on Arvada Street, approach the intersection of Arvada Street and Sky Court Circle in front of the house where the disturbance had been reported. It was the only car other than the police car moving on the street at that hour. Aull's car swerved into the intersection and back out again. Bowdich turned his car's spotlight on Aull's car "to see who it was," and he recognized Aull, who was known to him as a "safeman," meaning a burglar specializing in safe burglaries. He also recognized Aull's car. Aull stopped his car as soon as the spotlight was turned on. Bowdich did not use his red light, siren, or other emergency equipment, but said he would have stopped Aull if he hadn't stopped, and probably would have stopped him again if he had attempted to leave after stopping. Bowdich did not at that time intend to arrest Aull and had not observed him to be violating any law.

Aull and the officers both alighted from their cars, and they met at the rear of Aull's car. Bowdich looked into Aull's car through a rear window and saw tools on the floor. After securing Aull's permission, but without telling him he didn't have to consent, Bowdich and Chappell searched the car and found a jack hammer, a claw hammer, an electric drill, a crowbar, a pair of gloves, and an electric razor.

Meanwhile, back at the house, officers McKnight and Troup had found the battered safe with its door pried off,[1] and McKnight reported this fact on the police radio together with the information that Aull's car was seen leaving the area as the first police car arrived. Upon hearing this radio report, Bowdich informed Aull that he was under arrest for burglary. This was five to ten minutes after Aull first stopped. He was taken to the police station in the patrol car and his Chrysler also was taken there. Nothing was removed from the car or taken from Aull's person until after they reached the police station. About forty-five minutes after he first stopped, Aull was booked for investigation of burglary, and among the articles taken from him at the time were a pocket knife with a broken point; $51 in currency, mostly bills, which he had in his jacket pocket; and several Singer Sewing Machine Company contracts. A day or two later, his shoes were removed to see if they matched some prints found at the Singer Sewing Center, and other articles of clothing were also taken from him in jail. All of these items, and also those taken from Aull's car, were later introduced as evidence in the trial of the case.

Aull denied giving the officers permission to search his car, and stated that he always refused under similar circumstances, and "That's when they take me downtown." He admitted four felony convictions, including two burglaries.

1. It is not necessary to detail the testimony of officers McKnight and Troup and of Mrs. Cruz with regard to the search made at the Cruz home at 7404 Sky Court Circle, since the motion to suppress raised no question concerning the articles found there.

Aull's position is that a search without a warrant could have been made only as an incident to a lawful arrest, under the Fourth Amendment to the United States Constitution and art. II, § 10 of the New Mexico Constitution. The courts have long recognized another exception to the requirement that searches and seizures be undertaken by officers only after obtaining a warrant, that is, the search of a moving object, particularly an automobile, where "it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." United States v. Ventresca, 380 U.S. 102, 107 f. n., 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965), quoting the landmark case on this subject, Carroll v. United States, 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925).

Carroll was one of several authorities cited by this court in State v. Lucero, 70 N.M. 268, 275, 372 P.2d 837 (1962), where we said:

"* * * This case is within the well-established rule that a warrant is not required for the search of a movable vehicle if the officers have reasonable cause to believe that the automobile contains contraband or stolen goods. * * *"

Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), cited by Aull, actually is against him. It reaffirms Carroll, which it closely parallels in its facts, both being cases involving searches of automobiles used to transport liquor illegally. In each case the officers knew the reputation of the car's occupants for engaging in such activities and recognized the car, which factors also are present in the instant case. The Supreme Court in Brinegar carefully distinguished between searches on mere suspicion, or reputation alone, and searches on probable cause, stressing the officer's knowledge of underlying facts as well as ultimate facts regarding the suspect's reputation, and the existence of suspicious circumstances such as the car's appearance of being heavily loaded or on a highway frequently used by rum-runners.

Here the facts are every bit as strong as in Carroll and Brinegar. While the underlying facts, if any, known by the officer regarding Aull's reputation as a safeman were not brought out, the officer had knowledge that a "peeled" safe had been found nearby after a neighbor thrice had complained of loud hammering noises, that Aull's car contained tools well suited to such work (which tools he could see through the car window), and that Aull's car was the only one moving in the area at 3:00 a. m. These facts supplied probable cause for searching the car, without regard to Aull's reputation as a safeman.

The existence of "probable cause," whether for issuance of a search warrant or warrant of arrest, or for arrest without a warrant, or for search and seizure without a warrant, involves a case-by-case examination of the facts, and no two cases are precisely alike. Cf., State v. Deltenre, supra.

We do not find it necessary to determine whether Aull's initial detention was an arrest. We merely hold that, under the facts presented, the officers were acting within constitutional limits when they detained Aull on a public street and searched his car, and that trial court did not err in overruling his motion to suppress the evidence resulting therefrom. People v. Cassone, 20 A.D.2d 118, 245 N.Y.S.2d 843 (1963); People v. Peters, 18 N.Y.2d 238, 273 N.Y.S.2d 217, 219 N.E.2d 595 (1966) and note thereon, 4 Houston L.R. 589.

As previously noted, there was a conflict in the testimony as to whether Aull consented to the search, another possible basis for the trial court's overruling of the motion to suppress. As we pointed out in State v. Sneed, 76 N.M. 349, 351, 352, 414 P.2d 858, 860 (1966):

"The question of whether consent has been given is a question of fact subject to the limitations of judicial review. Villano v. United States, CCA 10, 310 F.2d 680 (1962). Each case must stand or fall on its own special facts, and in the

trial court's judgment of the credibility of the witnesses. United States v. Dornblut, supra [CCA 2, 261 F.2d 949 (1958)]. "The circumstances of the claimed consent were presented to the trial court. We decline to hold, that as a matter of law, the trial court was in error in denying the motion. * * *"

■ We also pointed out in the Sneed case and in State v. Herring, 77 N.M. 232, 421 P.2d 767 (1966), that the consent to the search must be freely and intelligently given, must be voluntary and not the product of duress or coercion, actual or implied, and must be proved by clear and positive evidence with the burden of proof on the state. We believe these standards are met in the instant case.

Aull asserts that the trial court committed fundamental error in not declaring a mistrial during voir dire examination of the prospective jurors when the prosecution and counsel for Eubanks asked questions which caused some of the prospective jurors to admit, in the presence of several of the jurors ultimately impanelled to try the case, that they were aware of the publicity concerning Aull's testimony in a civil suit that he was a paid arsonist, as previously discussed in connection with the motions for change of venue and for severance. Aull's counsel was first to bring out the arson matter in the voir dire when he inquired as to the prospective jurors' knowledge of the then very recent publicity about Aull. At first he cautioned them not to reveal the substance of such knowledge, but, after one said he had read about an arson case, all of the attorneys asked questions which, unintentionally perhaps, elicited answers of the same type. Counsel for Eubanks pursued the matter further and elicited an answer from a prospective juror that Aull was involved in a fire at the Fair Furniture Company and that he believed the fire was unlawfully caused. After three of the first twelve prospective jurors had identified Aull with the arson publicity, the prosecutor asked for a conference of counsel at the bench, after which the

trial judge excluded from the courtroom the prospective jurors whose names had not yet been drawn. After eleven jurors had been selected, the court had those selected adjourn to the jury room during the examination of three prospective jurors, and the selection of one of them as the twelfth juror.

No objections were made to the questions asked on voir dire, and no motion was made for a mistrial or a new trial on the ground now asserted to be fundamental error.

■ No authority has been cited for applying the fundamental error rule to such a situation. We have always applied the rule sparingly, to prevent a miscarriage of justice, and not to excuse failure to make proper objections in the court below. See State v. Heisler, 58 N.M. 446, 461, 462, 272 P.2d 660 (1954), where the early cases are collected; State v. Lucero, supra; State v. Lott, 73 N.M. 280, 387 P.2d 855 (1963); State v. Gonzales, 77 N.M. 583, 425 P.2d 810 (1967). Here there appears to be no miscarriage of justice or denial of a right essential to the defense.

In Territory v. Abeita, 1 N.M. 545 (1873), although the term "fundamental error" was not employed, it was held that the appellant could not raise for the first time on appeal the disqualification of a juror on grounds of non-residence unless it appeared this was not known to him at the time of trial. This court has in other cases held that irregularities in impaneling of juries, not objected to in the trial court, could not be reviewed on appeal. State v. Talamante, 50 N.M. 6, 165 P.2d 812 (1946); United States v. De Amador, 6 N.M. 173, 27 P. 488 (1891).

■ While Aull's voluntary admission of arson in his testimony in the civil action might in some respects be compared to a criminal conviction, the jury might have been impressed by this candor. In any event, the situation was of his own making; his own attorney asked the first voir dire question which brought the matter out before the jury; no objection was made, and neither was a motion for a mistrial or a new trial; and there is nothing in the

record to show that the rights of the defendant were prejudiced.

Finally, Aull complains of several remarks made by the assistant district attorney in his final argument to the jury, but only two of them were objected to at the time by defense counsel. In one of these, appellants were characterized as a "couple of thugs," and in the other the assistant district attorney said, "Just compare and weigh the evidence presented by the State with the evidence presented on behalf of Mr. Aull and Mr. Eubanks."

The trial court instructed the jury to disregard the "couple of thugs" statement and instructed the assistant district attorney to withdraw it, which he did. In our view, this counteracted any prejudicial effect this remark may have had. State v. Lopez, 61 N.M. 34, 294 P.2d 276 (1956); State v. Mersfelder, 34 N.M. 465, 284 P. 113 (1927); State v. Garcia, 57 N.M. 665, 262 P.2d 233 (1953); State v. Cummings, 57 N.M. 36, 253 P.2d 321 (1953).

The second statement is claimed to amount to a comment on the defendants' failure to testify in their own defense, as forbidden by Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). We have had six occasions to apply or distinguish Griffin. State v. Miller, 76 N.M. 62, 412 P.2d 240 (1966); State v. Flores, 76 N.M. 134, 412 P.2d 560 (1966); State v. Buchanan, 76 N.M. 141, 412 P.2d 565 (1966); State v. Paris, 76 N.M. 291, 414 P.2d 512 (1966); State v. James, 76 N.M. 376, 415 P.2d 350 (1966); State v. Sandoval, 76 N.M. 570, 417 P.2d 56 (1966). None of these cases involves the precise question here raised, but it has been decided adversely to appellant's position in a number of jurisdictions, notably the federal, where the doctrine originated. Ruiz v. United States (10th Cir. 1966), 365 F.2d 103; Garcia v. United States (5th Cir. 1963), 315 F.2d 133, cert. denied, 375 U.S. 855, 84 S.Ct. 117, 11 L.Ed.2d 82 (1963); Jordan v. United States (5th Cir. 1963), 324 F.2d 178; United States v. Johnson (4th Cir. 1964), 337 F.2d 180; Leathers v. United States (9th Cir. 1957), 250 F.2d 159; State v. Hodge, 399 S.W.2d 65 (Mo.1966); Schweizer v. State, 399 S.W.2d 743 (Tenn. 1966).

Aull points to several other remarks made by the assistant district attorney during closing argument, particularly to some directed at the trial tactics of defense counsel. These were not objected to at the time, and we might disregard them. Territory v. Hicks, 6 N.M. 596, 30 P. 872 (1892); Territory v. Torres, 16 N.M. 615, 121 P. 27 (1911). However, we have examined these remarks and find them not prejudicial, though in poor taste.

Finding no error, we affirm.

It is so ordered.

NOBLE and COMPTON, JJ., concur.