413 P.2d 694

STATE of New Mexico, Plaintiff-Appellee,

v.

Oliver MAESTAS, Defendant-Appellant.

No. 7985.

Supreme Court of New Mexico.

April 25, 1966.

Robert A. Morrow, Raton, for appellant.

Boston E. Witt, Atty. Gen., Roy G. Hill, Asst. Atty. Gen., Santa Fe, for appellee.

COMPTON, Justice.

The defendant was convicted by a jury of Union County of the crime of rape and, from the judgment imposing sentence therefor, he appeals.

The appeal is based on a single point, that is, that the testimony of the prosecuting witness is so inherently improbable as to amount to fundamental error. By assigning fundamental error appellant seeks to bring the case within the exception enunciated in State v. Garcia, 19 N.M. 414, 143 P. 1012, wherein we stated:

"There exists in every court, however, an inherent power to see that a man's fundamental rights are protected in every case. Where a man's fundamental rights have been violated, while he may be precluded by the terms of the statute or the rules of appellate procedure from insisting in this court upon relief from the same, this court has the power, in its discretion, to relieve him and to see that injustice is not done.

"The restrictions of the statute apply to the parties, not to this court. This court, of course, will exercise this discretion very guardedly, and only where some fundamental right has been invaded, and never in aid of strictly legal, technical, or unsubstantial claims nor will we consider the weight of evidence if any substantial evidence was submitted to support the verdict. If substantial justice has been done, parties must have duly taken and preserved exceptions in the lower court to the invasion of their legal right before we will notice them here. But in this case justice has not been done. A man has been convicted and sentenced to imprisonment for a term of years where there is, not only no evidence to support the verdict, but where the evidence conclusively established his innocence. Under such circumstances we cannot permit such an injustice to be done. * * *"

The direct incriminating evidence against appellant was given by the prosecutrix, Angie Lovato. We review briefly her testimony. She is the mother of three chil-

dren, ages 3 years, 2 years, and 6 weeks, and weighs 105 pounds. They lived alone in Clayton. On January 22, 1965, she requested her cousin, Mary Gonzales, to spend the night with them. Appellant came to her home about 5:00 p. m. on that day and inquired of her if she would go out with him. She answered "no." Around 2:00 a. m. the next morning appellant knocked at the door. Mrs. Lovato refused to let him in. Nevertheless, appellant forced open the door and entered. Mrs. Lovato tried to persuade him to leave and they argued. Admittedly, appellant had been drinking. He brought seven bottles of beer into the house with him. Mrs. Lovato spent some time with appellant in an effort to have him leave. Finally, she told him that she would call the law if he did not leave. This seemed to enrage appellant and he appeared "wild." Mary Gonzales became frightened and slipped out the back door and went to the home of her aunt who lived near. Appellant continued to drink beer and insisted on having sexual intercourse, but Mrs. Lovato refused his advances. She threw beer bottles at him, some of which broke as they fell to the floor. Appellant grabbed her, slapped her, and pulled her to the floor. She screamed for help but to no avail. She struggled with him and he kicked her, hit her, held her down by his own weight and by her hair while he forcibly committed the offense which took eight to ten minutes. Both before and after the commission of the offense, the prosecutrix tried to escape but when she did so, the appellant would threaten injury to the baby. After the act he swept up the broken glass and mopped the floor. Finally, he stated he was going to bed, and did so by himself. When the prosecutrix was certain that he had gone to sleep, she dressed, dressed the children and went to the police station about 4:00 a. m. where she reported the incident and signed a complaint against the appellant.

Appellant contends that the testimony of the prosecutrix is inherently improbable in that she remained at the house while the appellant picked up the broken glass and beer bottles and mopped the floor; in that no sperm was found in the prosecutrix' female organs; in permitting the appellant to go to bed in her house; and in that appellant was not scratched or otherwise injured, had she resisted. While we do not weigh the evidence, we do weigh the prosecutrix' story, not against the denial of the appellant, but in the scales of inherent probability. State v. Taylor, 32 N.M. 163, 252 P. 984. And when we do so, we do not find her story improbable. Compare State v. Nuttall, 51 N.M. 196, 181 P.2d 808; State v. Garcia, 46 N.M. 302, 128 P.2d 459. It is plausible that Mrs. Lovato would remain with her children rather than leave them in the appellant's hands. According to Dr. Gordon W. Johnson, whom we later mention, the life of sperm in the female organ is from 12 to 24 hours, normally,

after sexual intercourse, and here more than 12 hours had expired when he examined her. It is plausible also that a man can protect himself from injury inflicted by a 105-pound woman.

Moreover, there was strong corroboration. Mary Gonzales testified that when appellant came to the door, she and Mrs. Lovato tried to bar the door but the appellant forced it open; that he brought six or seven beers with him; that he insisted that he was going to stay overnight; that Mrs. Lovato told him unless he left, she would "put the law on him"; that appellant become angry and looked "wild." At this point Mary Gonzales testified that she became frightened and left; that she spent the rest of the night with her aunt.

Charles Paye of the Clayton Police Department testified that he went to Mrs. Lovato's home about 6:30 or 7:00 a. m. that morning and arrested the appellant; that he was still asleep; that appellant was wearing a white shirt which was wrinkled and dirty and that there were blood spots on the upper part of it, on one sleeve and on one side. He observed a rug on the floor with blood spots on it. He also noticed bruises on Mrs. Lovato's arms and ankle when she brought the children to the police station.

Mrs. Lovato was examined by Dr. Gordon W. Johnson at Union County Hospital at 4:20 p. m. that day. His examination and test revealed that she had had sexual intercourse within 36 hours previously. He testified that she had multiple bruises and abrasions about the body, on her knee, her right elbow, on her left arm, and that she had irritation on the left lip of the vagina caused by penetration. We think the evidence points unerringly to appellant's guilt.

We find nothing in the record that warrants the application of the doctrine of fundamental error. Appellant's rights have not been violated. He had a fair trial; the testimony of the state's witnesses implicated him with the crime charged and affords substantial support for the verdict of the jury.

The judgment should be affirmed, and it is so ordered.

NOBLE and MOISE, JJ., concur.