**People of the State of Illinois, Plaintiff-Appellee, v. Dallas Erb and John Weiss, Defendants-Appellants.**

Gen. No. 69–201.

Second District.

August 18, 1970.

127

Allan A. Ackerman and Thomas P. Durkin, of Chicago, for appellants.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Malcolm F. Smith, Assistant State's Attorney, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Dallas Erb and John Weiss were convicted by a jury of the offense of possession of a narcotic drug, marijuana. (Ill Rev Stats 1967, c 38, § 22–3.) Each appeals from the judgment of conviction and the sentence imposed. Defendant Erb was sentenced to a term of two years probation, the first fifteen days to be served in the county jail; defendant Weiss was sentenced to three years probation, the first ninety days to be served in the county jail.

Both defendants urge that their arrests were unlawful and that the court erred in refusing to exclude evidence thereby seized. In addition, both defendants claim prejudicial trial errors, and defendant Erb claims that she was not proven guilty beyond a reasonable doubt.

The occurrence testimony presented by the State consisted of the testimony of Deputies Neuman and Ory: At about 3:00 a. m. on October 8th, 1968, they were on routine patrol when they observed a car parked on a bridge in the east bound lane of Roosevelt Road. There appeared to be no lights showing on the car. As they approached, they observed two persons alight from the vehicle, and stand to its right talking to persons in the car. They pulled their squad car behind the parked vehicle and approached. Deputy Ory, upon asking for the driver's identification, said that he smelled what he thought to be the odor of marijuana emitting from the car. He said he noted the same odor from the two persons in the car and later from the two who were standing at the side. He placed the driver and the other occupant of the car under arrest and searched them.

A pistol was discovered on the passenger, and he was subdued after a short scuffle.

Deputy Neuman, meanwhile had been watching the two persons outside the car, later identified as the defendants. The defendants were observed getting out of the car and standing on the grassy shoulder of the road.

Deputy Ory testified that after he had placed the occupants of the parked vehicle in the squad car, he motioned defendant Weiss to come over and asked him to empty his pockets. After Weiss had finished, Deputy Ory placed his hand in Weiss's jacket pocket and found a packet which appeared to him to contain a compressed form of marijuana. He then placed Weiss in the squad car.

Deputy Neuman testified that he then told Ory that he had seen Miss Erb appear to throw something to the ground some eight to ten minutes earlier. Ory testified that up to that time he did not intend to arrest Miss Erb, but when Neuman told him that he saw her throw something into the weeds, he placed her under arrest, before finding the packet in the weeds. Ory went to the designated spot and found the packet which was later identified as containing marijuana. He testified that the packet was not weather-beaten or dirty.

Defendant Erb testified that she did not see anyone pick a packet from the ground and that she saw the packet, which Ory alleged he found, for the first time at the trial. She testified that she did not throw any object from her purse at any time.

Defendant Weiss denied that he had a packet of marijuana in his jacket. He testified that he saw an object in Ory's hand at the scene but had not seen it before and that he saw the packet for the first time at the trial.

Upon a later search of Miss Erb's purse at the police station, a corncob pipe and cigarette papers were found, which were introduced into evidence. A search of the

glove compartment of the parked vehicle made after all four had been placed under arrest and put in the squad cars, revealed evidence of particles of marijuana, later collected at the police station by vacuum.

A motion to suppress evidence was filed prior to trial and was denied after a hearing in which Deputies Ory and Neuman testified for the State. Defendants argue that the motion to suppress should have been allowed on the theory that there was no probable cause to arrest either defendant, and that the alleged evidence against them was the product of an unlawful arrest.

We do not agree. Defendants seek to separate themselves from the occupants of the vehicle on the theory that they were merely standing outside and "doing nothing" prior to the arrest and search. Defendant Weiss suggests that the sole reason for his arrest and subsequent search was, as Deputy Ory testified, the alleged fact that the odor of both smoked and unsmoked marijuana was present in the car which Weiss and Erb had exited some minutes before. Defendant Erb argues that she was placed under arrest at a time when she was doing nothing at all and at a time before the alleged finding of the packet in the weeds.

The defendants argue that their *mere presence* in or at the car containing other passengers, which car and/or its other passengers gave evidence that a crime had been committed, did not give the deputies probable cause to make a valid warrantless search of their persons, and the defendants rely on United States v. DiRe, 332 US 581, 92 L Ed 210, 68 S Ct 222 (1948), and The People v. Bowen, 29 Ill2d 349, 194 NE2d 316 (1963) as support for their contention. In DiRe, a warrantless search of DiRe, one of the passengers, was made solely on the statement of another passenger. The passenger was in possession of some counterfeit gas ration cards which he said he had received from still another passenger. (Not DiRe) The subsequent search of DiRe was properly held to be with-

131

out probable cause. In Bowen, the police, acting on information that a woman was carrying a gun on the street concealed in a newspaper, secured a surrender. They then searched her husband, the defendant, who was standing nearby, for weapons and found nothing. A more thorough search of the defendant was later made and heroin was found on his person. The court held that the later search was not incidental to the original arrest of defendant's wife and that there was no probable cause that defendant was guilty of a crime prior to the search. Both cases are distinguishable on their facts from the one before us.

 The entire circumstances confronting the officers must be viewed to determine whether they had reasonable cause to arrest the defendants. The arrest and subsequent search proceeded directly out of an investigation pursuant to apparent violations of traffic laws prohibiting stopping or parking on a public highway or bridge (Ill Rev Stats 1967, c 95½, §§ 185, 187) and operating a motor vehicle on a public highway without proper lights (Ill Rev Stats 1967, c 95½, § 200). Testimony of the "odor of marijuana emitting from the vehicle and from all of the persons," justified the further belief that more than a traffic violation was involved. Where the smell of contraband is established to the satisfaction of the court, it is a sufficient basis under proper circumstances for officers to believe that a crime is being committed in their presence. See United States v. King, 305 F Supp 630, 633 (1969) and cases therein cited; People v. Jackson, 241 Cal App2d 189, 50 Cal Rptr 437, 438 (1966) ; and People v. Christensen, 2 Cal App3d 546, 83 Cal Rptr 17, 19 (1969).

Defendants argue that "smell has been held insufficient as the basis of an arrest," citing Johnson v. United States, 333 US 10, 92 L Ed 436, 68 S Ct 367 (1948), and Chapman v. United States, 365 US 610, 5 L Ed2d 828, 81

S Ct 776 (1961). In Johnson, narcotics officers entered a hotel room upon invitation after smelling burning opium. A warrantless search which uncovered opium was held to be without probable cause (the court indicating, however, that the smell would have been sufficient cause for a magistrate to issue a search warrant). In Chapman, entry into private premises, based upon federal agents smelling a strong odor of mash, was held an insufficient ground for an entry without a search warrant. However, the opinions in both cases are premised upon the conclusion that there were no exceptional circumstances, such as threat of destruction or removal of evidence or danger of flight, requiring an immediate search of private premises.

█ The courts, moreover, have long distinguished between an automobile and a home or office in terms of circumstances justifying a warrantless search. See Chambers v. Maroney, 399 US 42, 26 L Ed2d 419, 426, 90 S Ct 1975, 1979 (1970), holding that "automobiles and other conveyances may be searched without a warrant in circumstances which would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize." Here, the mobility of the car, the fact that the occupants have been alerted, and the danger that evidence may never be found again if a warrant must be obtained, support the reasonableness of the search of the car after the apparent traffic violation and the detection of the odor of marijuana.

Other cases cited by the defendants as support for their assertion that herein the warrantless searches were invalid and illegal, such as Beck v. Ohio, 379 US 89, 13 L Ed2d 142, 85 S Ct 223 (1964), and United States v. Henry, 259 F2d 725 (1958), are similarly distinguishable on the basis that in those cases, there was no basis for

the initial arrest of the defendants and, therefore, the subsequent search and findings of evidence were unlawful.

■ ■ It was reasonable for Deputy Ory to arrest and search the occupants of the car, and it was reasonable for Deputy Neuman to meanwhile keep defendants, Erb and Weiss, under observation, as persons who had alighted from the car just previously and remained in the vicinity of it. While it is true that the finding of a weapon on the person of one of the other passengers justified a pat-down search of Weiss, Officer Ory was not confined herein to such a limited search because the smell of marijuana that he observed to emanate from the car and Weiss's person afforded him sufficient probable cause to believe a crime had just been or was being committed. The officers were not obliged to assume that Weiss had emptied everything from his pockets and were reasonably justified in making the further search. Officer Neuman's report to Ory as to defendant Erb's suspicious movements and the finding of the packet near her, gave probable cause for her detention and search.

■ Miss Erb places considerable emphasis on a contention that she was not arrested until after the search of her purse at the police station. We do not deem this material even if it were justified by the facts. Since the police had probable cause in our opinion to detain her and undertake a search at the arrest site and later of her purse at the station (see 19 ALR3d 727, at 739–741), the probable cause to arrest existed at the scene, and the arrest may be considered to have been made at that time even though formal charges may not have been brought until later. See Sibron v. New York, 392 US 40, 77, 20 L Ed2d 917, 88 S Ct 1889 (1968).

The further argument of defendant Erb that she was not proven guilty beyond a reasonable doubt, rests principally upon a claimed vagueness and inconsistency in the testimony of Deputy Neuman.

Neuman's testimony at the trial on direct examination was,

"A. As I was watching them, I saw an object being thrown approximately three to four feet away from Mrs. Erb — Miss Erb.

"Q. Do you know who threw that object, Deputy?

"A. I believe it was Miss Erb.

"Q. What did you notice, if anything, about this object? Were you able to detect its color at all?

"A. It was within the scope of the headlights and it seemed like it was a silvery-type object. It had a flash to it.

"Q. Where did Miss Erb throw this silvery object?

"A. Further towards the ditch."

and in further cross examination, defense counsel sought to impeach the witness with his testimony at the pretrial motion to suppress:

"Q. Do you recall this series of questions being asked and your answers, page 97, page 99:

" 'Q. And this packet of tinfoil that was thrown on the ground by Miss Erb did you see her do that?

" 'A. I saw it drop there, sir.'

"Page 99:

" 'Q. Officer Neuman, you said you saw Miss Erb throw something, is that right?

" 'A. No, sir. I saw this object drop.'

"Q. Do you recall that?

"A. No, sir, I don't.

"Q. Does this refresh your recollection as to what really happened?

"A. I can't recall. It has been so long."

On re-direct examination the witness testified,

"Q. Deputy Neuman, exactly what did you see Miss Erb do in relation to her purse and the silver object that you saw?

"A. She had her purse in her hand and I couldn't tell you which hand, and this silver object being thrown. It was—

"Q. When you say 'thrown,' how do you mean thrown?

"A. It was in the air underhanded.

"Q. Now, you say it went four to four and a half feet?

"A. Yes, sir.

"Q. Did you see the approximate location, Deputy, where it landed?

"A. Yes, sir. I told Ory, Deputy Ory where it was at."

In People v. Archie, 105 Ill App2d 211, 214, 245 NE2d 59 (1969), upon which defendant Erb relies, the court noted "there is no testimony indicating that anyone saw the defendant make a motion which would indicate that he was throwing something to the floor or discarding some item." The record simply indicated that the defendant took his hand out of his pocket and placed it along his leg, and that it was not known whether this was the right or left hand. No one testified to seeing anything in his hand or anything drop through the air (as is the case with defendant Erb). The discovery of a marijuana cigarette near the defendant on his left side was held not to establish possession of narcotics.

However, in Archie, the court distinguished The People v. Richardson, 21 Ill2d 435, 437, 172 NE2d 801 (1961), which bears more of a similarity to the circumstances present here. In Richardson, the conviction for the possession of narcotics was affirmed on circumstantial evidence that the defendant was seen to "make a motion

which suggested to him (the officer) that defendant was throwing something to the ground," and the narcotics were found only a few feet from where Richardson was standing.

The People v. Jackson, 23 Ill2d 360, 178 NE2d 360 (1961), also cited by the defendant Erb, is authority for the proposition that mere suspicious behavior in the vicinity of narcotics is not proof of possession. There, the presence of the narcotics in a common stairwell which was also available to other tenants, as to whom no investigation was made, was insufficient to prove possession although the defendant acted suspiciously in locking herself in the bathroom when the officers appeared.

Here, an officer testified to the smell of marijuana on all the persons, including defendant Erb; she was observed making a motion which suggested to the officer that she was throwing something to the ground, and the marijuana was found in her immediate vicinity at the particular place where the officer indicated it would be found. The finding of the pipe, and cigarette papers commonly used to roll marijuana cigarettes in this defendant's purse was an additional circumstance supporting the jury's determination that her denial was not credible.

 Miss Erb argues that the testimony of officer Neuman was unconvincing and could not be reconciled within the rule of The People v. Nelson, 18 Ill2d 298, 164 NE2d 21 (1960). We do not find that, on the whole record, Neuman's testimony is necessarily inconsistent. The jury was justified in believing that the officer saw a motion on Miss Erb's part which drew his attention to her in time to see a flying object, and they were entitled to disbelieve the testimony of defendant that she had never seen the object until the trial. We cannot substitute our judgment under these facts for the jury's findings. See The People v. Nicholls, 42 Ill2d 91, 95, 245 NE2d 771 (1969) ; The People v. Richardson, supra,

at page 438. We conclude that Miss Erb was found guilty beyond a reasonable doubt.

Defendants next argue that certain cross-examination of the defendant Weiss, which elicited testimony regarding an unchaperoned automobile trip to California made by the defendants, was grossly prejudicial and prevented a fair trial. The questioning concerned defendant Weiss's friendship with one Mr. Mud. Defendants testified that Mud had dropped off the defendant, and Whitcomb and Rudder (the two found in the car at the bridge), at the home of Miss Erb's parents. This home was located some 150 feet away from where the car was found parked on the bridge. It was defendants' testimony that Whitcomb and Rudder drove away together and that the defendants did not approach the stopped vehicle until after the squad car had passed them on the road, which was in contradiction to the officers' testimony that the defendants alighted from the parked car at the bridge.

The State's theory is that it was necessary to reduce the credibility of Mud, if he were to be called as a witness after defendant Weiss had testified, by showing the extent of his friendship with Weiss. Defense counsel objected to questions relating to a vacation trip Weiss had taken with Mud. The court stated in chambers that he was permitting the questioning to the extent it tended to show the friendship between Weiss and Mud. The witness then related in the presence of the jury a 2–3 day trip to California and a stay there with Weiss's aunt. Weiss was then asked who was with him on the trip and answered without objection, "Dallas Erb."

This question went beyond the purpose for which the particular cross-examination was being permitted and should not have been asked. However, defendant did not object nor request a jury instruction or make a motion for a mistrial. Ordinarily one who fails to object to the admission of evidence waives his right to complain of its admissibility. The People v. Williams, 28 Ill

2d 114, 116, 190 NE2d 809 (1963); The People v. Mc-Crimmon, 37 Ill2d 40, 47, 224 NE2d 822 (1967). However, plain errors or defects affecting substantial rights may be noticed although not brought to the attention of the trial court. (Ill Rev Stats 1967, c 110A, Supreme Court Rule 615.)

The testimony that the defendants drove together to California is not evidence of an illicit relationship such as we held to be so prejudicial as to constitute reversible error in People v. Smith, 74 Ill App2d 458, 221 NE2d 68 (1966). The admission of the testimony referred to is not an error which affects substantial rights of the defendant and is not ground for reversal.

The judgments of the trial court are, therefore, affirmed.

Affirmed.

DAVIS, P. J. and ABRAHAMSON, J., concur.