[No. 743-3.    Division Three.    May 9, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. AUSTIN WENDLE
SHOEMAKER *et al., Appellants.*

*William J. Powell* (appointed counsel for appeal) and
*Bryan P. Harnetiaux,* for appellants.

*Robert F. Patrick, Prosecuting Attorney,* for respondent.

MUNSON, J.—Defendants appeal their conviction for pos-
session of more than 40 grams of controlled substances, *i.e.,*
marijuana and hashish.

The only issue on appeal is whether the controlled sub-
stances were obtained by law enforcement officers as a
result of an illegal search and seizure.

On March 2, 1972, defendant Shoemaker, accompanied by defendant McDirmid, was driving his 1953 white Chevrolet panel truck south on United States Highway 195. Also traveling the same route that afternoon was Whitman County Deputy Sheriff Clift, driving an unmarked car bearing Idaho license plates. South of Spangle, Washington, he came up behind the defendants' vehicle, which was traveling at a speed of 45 to 50 m.p.h. Deputy Clift noted the left-rear taillight lens was missing and a white light was shining to the rear. He passed the defendants' vehicle and observed Shoemaker driving. For some reason the vehicle triggered Deputy Clift's intuition; he became suspicious that the vehicle might contain controlled substances. After passing defendants' vehicle, he pulled off the road to allow them to catch up and pass him. He pulled in behind the defendants' vehicle and other traffic. Near Plaza, Washington, the defendants pulled off the road and let a number of cars, including Deputy Clift's vehicle, pass them.[1]

Deputy Clift then radioed ahead to troopers of the Washington State Patrol in Rosalia, Washington, located further south on Highway 195, and advised them of the description of the defendants' vehicle, of the faulty left-rear taillight lens, that the occupants of the defendants' vehicle "acted suspiciously on the highway, and that I would like to see the vehicle stopped. That there was a possibility there could be something in the vehicle."

At the suppression hearing, Deputy Clift referred to three factors which gave rise to his "suspicions," *i.e.*, the

---

[1]This incident occurred before the effective date of RCW 46.61.427, which reads as follows:

"Slow Moving Vehicle To Pull Off Roadway. On a two-lane highway where passing is unsafe because of traffic in the opposite direction or other conditions, a slow moving vehicle, behind which five or more vehicles are formed in a line, shall turn off the roadway wherever sufficient area for a safe turn-out exists, in order to permit the vehicles following to proceed. As used in this section, a slow moving vehicle is one which is proceeding at a rate of speed less than the normal flow of traffic at the particular time and place. [1973 c 88 § 1.]" Signed by the Governor March 14, 1972.

panel truck was traveling at a slow speed of 45 to 50 m.p.h.; the truck pulled off the shoulder to let Clift and other traffic pass; and, the truck looked similar to, but was not the same as, another truck which he suspected of being involved in narcotics in Whitman County. At one time Deputy Clift indicated that his suspicions were based solely upon the fact that the defendants' vehicle pulled over and let a line of traffic go by.

The defendants pulled into a drive-in in Rosalia, Washington. Trooper Sly of the Washington State Patrol, who had heard Deputy Clift's radio broadcast, observed the defendants' vehicle drive through town. He pulled in next to the defendants' vehicle and saw the defective left-rear taillight lens. McDirmid got out of the vehicle and went into the drive-in. The driver, Shoemaker, approached Trooper Sly. They engaged in a discussion regarding the defective taillight and lens. Thereafter Trooper Sly entered the defendants' vehicle to check the brake-pedal action. He found it satisfactory and got out of the vehicle. By this time, Trooper Small, accompanied by a "cadet" had pulled up to the scene. Trooper Sly advised Trooper Small the brakes were in proper working order and further that he had detected the odor of marijuana. At trial, he stated it smelled like both marijuana smoke and the plant itself.

Inasmuch as Trooper Sly's shift had ended, he departed the scene. Trooper Small, in turn, made his own inspection of the brakes. While inside, he observed a "roach clip" in plain view, with what appeared to be a residue of marijuana upon it. By this time, Deputy Clift had arrived, and had walked up to the driver's side of the defendants' vehicle while Trooper Small was inside. He testified he could smell the odor of marijuana smoke from outside of the vehicle. After Trooper Small got out of the vehicle, Deputy Clift entered for the purpose of pumping the brakes, while Trooper Small observed the operation of the rear brake lights.

Trooper Small and Deputy Clift consulted each other

regarding the marijuana odor and the roach clip, then arrested both defendants. McDirmid was arrested as he returned to the vehicle from the drive-in; he was read his *Miranda* rights. Prior to beginning a search of his person, Trooper Small advised him it would be easier if he had anything on him to produce it. McDirmid thereupon handed over what appeared to be a bag of marijuana. Trooper Small still conducted a personal search, but found no contraband. Thereafter, he advised McDirmid he contemplated a thorough search of the vehicle and that it would make it easier if he told the officers if and where any contraband was located in the vehicle. McDirmid told the officers the location of contraband in the spare-tire compartment.

While this was taking place, Deputy Sheriff Clift placed Shoemaker under arrest, gave him his *Miranda* warnings, searched his person and found 1 gram of hashish.

The defendants were charged with possession of a controlled substance. They moved to suppress the evidence, contending such was the product of an illegal search and seizure; the motion was denied. Defendants waived their right to jury trial and submitted their case to the court. They offered no defense, preferring to stand upon their motion to suppress. They were found guilty and judgment and sentence was entered. The defendants appeal from the court's failure to grant their motion to suppress.

■ The fact that an automobile is involved "does not declare a field day for the police in searching automobiles. . . . there must be probable cause for the search." *Almeida-Sanchez v. United States*, 413 U.S. 266, 269, 37 L. Ed. 2d 596, 93 S. Ct. 2535 (1973). *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925). The ultimate standard by which search and seizures are to be judged is reasonableness. *Cady v. Dombrowski*, 413 U.S. 433, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973); *State v. Lund*, 10 Wn. App. 709, 519 P.2d 1325 (1974).

Defendants challenge the justification for the intrusion into their vehicle by the troopers and the deputy sheriff. Had the officers sought a search warrant prior to this incident, they clearly would not have been able to show sufficient probable cause to justify its issuance. Only Deputy Clift's intuition gave birth to the idea that the vehicle contained controlled substances. Intuition is insufficient probable cause. *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *Brinegar v. United States,* 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949); *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974).

■ Exceptions to the requirement of a search warrant have been delineated where automobiles are involved.[2] None of these exceptions are applicable in the instant case. The initial contact with the defendants involved a defective taillight. While the driver was detained to discuss this defect, a custodial arrest was not made prior to entry of the vehicle.[3] There being no arrest, no search could have been performed incident to an arrest. Even if there had been an arrest, on the facts then known to the officers, no search of the vehicle would have been justified. Pursuant to arrest

_____

[2](a) Search of an automobile on a public highway, where there is probable cause to search and " 'where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' " *Almeida-Sanchez v. United States, supra* at 269, quoting from *Carroll v. United States, supra* at 153. *Coolidge v. New Hampshire, supra; Chambers v. Maroney, supra; Carroll v. United States, supra; State v. Birdwell,* 6 Wn. App. 284, 492 P.2d 249 (1972); *State v. Cagle,* 5 Wn. App. 644, 490 P.2d 123 (1971).

(b) Search incident to valid arrest. *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969); *Preston v. United States,* 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881 (1964); *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965); *State v. Stringer,* 4 Wn. App. 485, 481 P.2d 910 (1971).

(c) Seizure of evidence in plain view. *Harris v. United States,* 390 U.S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992 (1968); *State v. McIntyre,* 3 Wn. App. 799, 478 P.2d 265 (1970).

[3]*United States v. Robinson,* 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973); *Gustafson v. Florida,* 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488 (1973); *State v. Gluck, supra.*

for a misdemeanor, search for evidence of the crime or tools which would aid in escape is permissible. *State v. Greene,* 75 Wn.2d 519, 451 P.2d 926 (1969); *State v. Michaels,* 60 Wn.2d 638, 374 P.2d 989 (1962). The evidence of the crime, defective equipment, was in plain sight and no entry of the vehicle was justified.

■ However, the state now urges that the troopers had a right to enter the vehicle pursuant to RCW 46.64.070,[4] a vehicle inspection statute. We would agree, based on this statutory justification, had not the trooper been alerted to this vehicle by Deputy Clift's intuition. Trooper Sly testified he always checked the brakes on vehicles of this vintage. However, based on the radio message and the subsequent acts of Trooper Small and Deputy Clift, we hold the entry into defendants' vehicle was not for the purpose of an inspection under RCW 46.64.070, but in reality was for the purpose of an exploratory search, without probable cause, and based upon an ulterior motive. Subterfuge and pretext are not treated favorably when they conflict with constitutional rights. *State v. Michaels, supra; cf. United States v. Lefkowitz,* 285 U.S. 452, 76 L. Ed. 877, 52 S. Ct. 420, 82 A.L.R. 775 (1932); *State v. Kingsley,* 75 Wn.2d 552, 553, 452 P.2d 545 (1969); *State v. Montague,* 73 Wn.2d 381, 385, 438 P.2d 571 (1968); *State v. Sullivan,* 65 Wn.2d 47, 53, 395 P.2d 745 (1964).

[4]RCW 46.64.070

"To carry out the purpose of RCW 46.64.060 and 46.64.070, officers of the Washington state patrol are hereby empowered during daylight hours and while using plainly marked state patrol vehicles with red light to require the driver of any motor vehicle being operated on any highway of this state to stop and display his or her driver's license and/or to submit the motor vehicle being driven by such person to an inspection and test to ascertain whether such vehicle complies with the minimum equipment requirements prescribed by chapter 46.37 RCW, as now or hereafter amended. No criminal citation shall be issued for a period of ten days after giving a warning ticket pointing out the defect.

"The powers conferred by RCW 46.64.060 and 46.64.070 are in addition to all other powers conferred by law upon such officers, including but not limited to powers conferred upon them as police officers pursuant to RCW 46.20.430 and powers conferred by chapter 46.32 RCW."

RCW 46.64.070 was not enacted as a vehicle to gain entry to automobiles for the purpose of conducting exploratory searches. The intent was to allow troopers of the Washington State Patrol to make vehicle inspections "to ascertain whether such vehicle complies with the minimum equipment requirements prescribed by chapter 46.37 RCW, . . ." Deputy Clift's radio message made the officers' inquiry more than a routine investigation, conducted without any basis or probable cause to believe defendants were in possession of contraband. The defendants' conduct at the time of the radio message was no different than any motorist. The traveling public has a right to proceed without being subject to the inconvenience and indignity of a search based merely upon an officer's intuition. *Carroll v. United States, supra.* Thus we determine the justification for the initial entry, under these facts, to be unreasonable.

■■ Having found the initial entry unreasonable, all subsequent discoveries made as a result of that entry, should be suppressed. *Wong Sun v. United States, supra*; *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961). The state contends, however, that McDirmid voluntarily turned over the substances from his person and voluntarily disclosed the location of other substances in the vehicle. Thus his voluntary acts justify admissibility of this evidence.

We disagree. In *Bumper v. North Carolina,* 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968), the court stated at page 548:

> The issue thus presented is whether a search can be justified as lawful on the basis of consent when that "consent" has been given only after the official conducting the search has asserted that he possesses a warrant. We hold that there can be no consent under such circumstances.
>
> When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful au-

thority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.

When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.

(Footnotes omitted.)

The same reasoning applies here where the evidence which established probable cause to search was also impermissibly obtained.

McDirmid's disclosures were merely acquiescence to the trooper's apparent authority and his announced intention to search both McDirmid's person and the vehicle. Thus, McDirmid's "consent" was not voluntary. Likewise, the substance found on Shoemaker, being the product of the unjustified entry, culminating in his arrest and subsequent search, was inadmissible.

The trial court should have granted defendants' motion to suppress; no other evidence having been produced, the defendants having chosen to stand upon their motion to suppress, and there being no evidence deemed properly admissible in this case, judgment is reversed and charges based upon this evidence are dismissed.

GREEN, C.J., and McINTURFF, J., concur.

Petition for rehearing denied August 12, 1974.

Review granted by Supreme Court October 18, 1974.