540 P.2d 864

STATE of New Mexico, Plaintiff-Appellee,

v.

Yetta J. BIDEGAIN and Louis M. Grant, Defendants-Appellants.

No. 1637.

Court of Appeals of New Mexico.

May 28, 1975.

Certiorari Granted July 2, 1975.

J. W. Anderson, Rowley & Bowen, Tucumcari, for defendants-appellants.

Toney Anaya, Atty. Gen., Jane E. Pendleton, Andrea Buzzard, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

Defendants were convicted of possession of more than 8 ounces of marijuana under § 54–11–23, N.M.S.A.1953 (Repl.Vol. 8, pt. 2, Supp.1973). We reverse and dismiss.

The defendants' auto was stopped at a state police roadblock for a routine license and registration check. Grant, who was driving, produced a registration indicating ownership in another individual. One of the officers then attempted, unsuccessfully, to find through the national computer network if the car was stolen. During this brief check, another officer asked Grant to open his car trunk, then asked Grant for keys to open footlockers found inside the trunk. These events produced a considerable quantity of marijuana.

Defendants argue, as in their pre-trial motion to suppress, that the search of the trunk was illegal and that the marijuana subsequently seized should have been excluded. Ms. Bidegain also contests the substantiality of the evidence underpinning her conviction.

### Exclusion of Evidence

The Fourth Amendment of the United States Constitution encompasses the right of persons to be secure in their effects against unreasonable searches and seizures. And despite exceptions which have been allowed in some vehicular searches, the mere fact that an auto is involved "does not declare a field day for the police in searching automobiles . . . there must be probable cause for the search." *Almeida-Sanchez v. United States*, 413 U.S. 266, 269, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 596 (1973), cited in *State v. Shoemaker*, 11 Wash.App. 187, 522 P.2d 203 (1974); *State v. Brubaker*, 85 N.M. 773, 517 P.2d 908 (Ct.App.1973). See also *State v. Aull*, 78 N.M. 607, 435 P.2d 437 (1967); *State v. Lewis*, 80 N.M. 274, 454 P.2d 360 (Ct.App.1969).

The standard by which all search and seizure cases are to be determined is *reasonableness. Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). *State v. Hilliard*, 81 N.M. 407, 467 P.2d 733 (Ct.App.1970), states:

"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). . . ."

This case is no different.

The search initiated in this case was purely exploratory. There was no reason for the officer to make the opening inquiry: "What's in the trunk?" Had the officer sought a search warrant, he would not have been able to show probable cause to justify its issuance. The record shows that the question was asked from pure speculation, which is insufficient probable cause. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Brinegar v. United States*, supra. See *State v. Miller*, 76 N.M. 62, 412 P.2d 240 (1966).

■ Police officers cannot just ask anyone for permission to search his effects. As *State v. Lewis, supra,* says:

"In appropriate circumstances and in an appropriate manner, a police officer may approach a person to investigate possible criminal behavior even though the officer may not have probable cause for an arrest. To justify such an invasion of a citizen's personal security, the police officer must be able to specify facts which, together with rational inferences therefrom, reasonably warrant the intrusion. These facts are to be judged by an objective standard—would the facts available to the officer warrant a person of reasonable caution to believe the action taken was appropriate? *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Slicker,* 79 N.M. 677, 448 P.2d 478 (Ct.App.1968)." 80 N.M. at 276, 454 P.2d at 362.

■ The police officers claim that they did have a proper reason to ask to look inside the trunk: to check to see if the vehicle were stolen. Their theory is that if there were items in the trunk which the defendants could not identify, or if the jack and spare tire were missing, then there might be an indication that the car had been stolen.

This explanation is insufficient because there is nothing in the record to lead the officers to suspect the car of being stolen. After learning that the local computer outlet was not operating, the officers requested their headquarters to telephone Connecticut, where the car was registered, to check out the registration. This check would have indicated, without a search, whether the car were stolen. All the police knew at the time of asking their question was that the registration was not in the name of the driver. However, a registration was produced; and it happens often enough that a car owner gives the use of his auto to another driver.

■ The state contends that consent was given which validated the search of defendants' car trunk. It is established in the law of New Mexico that the voluntariness of a consent "must be proved by clear and positive evidence with the burden of proof on the state." *State v. Aull, supra.*

■ There is a conflict in the record as to when the police officers stated that they would get a search warrant. The officers said it was after the car trunk was opened, and after they smelled marijuana in the footlockers. Grant says it was before the trunk was opened, and that he opened the trunk only because the officers said they would get a warrant, feeling that he had no choice. This conflict does not meet the "reasonableness" test of *State v. Aull, supra,* and *State v. Lewis, supra.* See Justice Marshall's dissent in *Schneckloth v. Bustamonte,* 412 U.S. 218, 891, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ Judge Hendley, in his dissent below, suggests that the seizure of marijuana resulted from a proper convergence of "probable cause" and "exigent circumstances". *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Granting, for the sake of discussion, the presence of "exigent circumstances", we do not agree that the officers' alleged sniffing of the marijuana fragrance constitutes the requisite "probable cause".

Judge Hendley cites abundant case law as authority for the proposition that smell alone constitutes probable cause. In some of these cases, the officials involved had extensive experience or training dealing with the detection of marijuana. In the instant case, there is no evidence on the record as to the training or experience of the police officers making this warrantless search. The other cases cited by the dissent are replete with other types of probable cause and mention smell only in dicta.

Even had the officers in this case properly obtained consent to open the defendants' car trunk, the mere smell of marijuana in unopened footlockers would not have given them probable cause for a further

warrantless search, absent a foundation as to the officer's expertise.

 The defendants' conduct at the time of the registration check was no different from that of other motorists. The traveling public has a right to proceed without harassment. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925). We find these "stop and snoop" tactics of the state police to be harassment, and conclude that the search was unreasonable.

 The exclusionary rule must be applied and the evidence seized should have been suppressed. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L. R.2d 933 (1961); *State v. Washington*, 82 N.M. 284, 480 P.2d 174 (Ct.App.1971).

*Constructive Possession*

 Ms. Bidegain contests the substantiality of the evidence relating to her conviction for possession of the seized marijuana. There is no evidence on the record indicating that Ms. Bidegain had direct or constructive possession of the marijuana.

"For possession, the State must prove physical or constructive possession of the object, with knowledge of the object's presence and narcotic character. . . ." *State v. Maes*, 81 N.M. 550, 469 P.2d 529 (Ct.App.1970). There is no evidence that Ms. Bidegain had any control over the keys to the car or to the footlockers, or that she had any knowledge whatsoever of the contents of the car trunk. Mere presence in the absence of some outward manifestation is insufficient to show constructive possession. *State v. Salazar*, 78 N.M. 329, 431 P.2d 62 (1967).

 Where a person is not in exclusive possession, it cannot be inferred that she knew that marijuana was present or that she had control over it unless some other incriminating circumstances or statements buttress such an inference. *State v. Bowers*, 87 N.M. 74, 529 P.2d 300 (Ct. App.1974). No such circumstances or statements appear in the record of this case. Therefore, the case against Ms. Bidegain must be dismissed under this theory, as well as exclusion of evidence, above.

The trial court should have granted defendants' motion to suppress. Further, the evidence relied upon to sustain the conviction of Ms. Bidegain is totally insubstantial. Since the defendants presented no evidence, choosing to stand upon their motions, and since there is no evidence deemed properly admissible in this case, judgment is reversed and the charges based upon this evidence are dismissed.

It is so ordered.

SUTIN, J., concurs.

HENDLEY, J., concurs in part and dissents in part.

HENDLEY, Judge (concurring in part and dissenting in part).

Had the majority chosen to decide only the case at bar, I would have been inclined to merely register a mild dissent. However, the majority has not only decided Ms. Bidegain's and Mr. Grant's cases, but indeed has changed the law in at least two separate areas by means of an opinion that is wholly advisory. I am compelled to strenuously dissent.

The majority reverses Mr. Grant's conviction on three independent grounds, any and each of which would be sufficient to obtain the desired result. They could as easily have said, "the initial intrusion (the asking of permission to look into the trunk) being unlawful, all fruit of the intrusion is inadmissible." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In addition, they state yet a fourth ground for reversal of Ms. Bidegain's conviction which is again unnecessary in view of the holding with regard to the suppression of evidence. At the outset, I wish to note my agreement with the disposition of Ms. Bidegain's case. I, too, feel that the evidence against her is insubstantial. *State v. Bowers*, 87 N.M. 74, 529 P.2d 300 (Ct.App.1974).

Mr. Grant's conviction, however, should be affirmed. The majority, in reversing it, virtually abolish the doctrine of searches upon consent, change the standards of appellate review of factual matters and gratuitously formulate law on the sufficiency of "plain smell" for probable cause when such was neither objected to nor litigated below.

### Appellate Review

Basic to our review of any lower court decision is that, as to factual determinations, we are bound by the trial court's findings if they be supported by substantial evidence. *State v. Seaton*, 86 N.M. 498, 525 P.2d 858 (1974); *Williams v. New Mexico Department of Corrections*, 84 N. M. 421, 504 P.2d 631 (1972); *State v. Harrison*, 81 N.M. 324, 466 P.2d 890 (Ct. App.1970). Although the test for what will be considered substantial evidence has been variously stated, in practical effect it is that this court will not disturb findings of fact if there is any evidence whatsoever to support them. See *State v. McAfee*, 78 N.M. 108, 428 P.2d 647 (1967). Perhaps the sole exception to this rule is that in a rape case, we will weigh the testimony of the prosecutrix on the scales of inherent probability. *State v. Maestas*, 76 N.M. 215, 413 P.2d 694 (1966). The exception being inapplicable to the case at bar, we are enjoined from using any more lenient test than that of substantial evidence.

As the majority state, the evidence is conflicting as to when the officers threatened the defendants with obtaining a search warrant. The officers said it was after they first opened the trunk of the vehicle and smelled marijuana. Defendant Grant said it was before. The question of credibility of witnesses and the decision as to who to believe and who not to believe is for the trier of fact. *State v. McAfee*, supra. In spite of the fact that the trial court chose to believe the officers' version and there is substantial evidence to support it,[1] the majority do not feel bound because they say, consent must be proved by clear and positive evidence. See *State v. Aull*, 78 N.M. 607, 435 P.2d 437 (1967).

The majority confuse extent of appellate review with differing burdens of persuasion at trial. In New Mexico, while there are several levels of burden of persuasion (e.g. preponderance of the evidence, clear and positive evidence, proof beyond a reasonable doubt), there is only one standard of appellate review with the exception of rape cases. That standard is substantial evidence and it is irrelevant whether at trial a case can be made by a mere preponderance of the evidence or must be made by proof beyond a reasonable doubt. Compare *Sauter v. St. Michael's College*, 70 N. M. 380, 374 P.2d 134 (1962) and *State v. McAfee*, supra. In concluding that a heavier burden of persuasion at trial allows us to substitute our judgment for that of the trier of fact, the majority has changed the law.

### "Plain Smell"

The trial court found that the initial consent to open the trunk of the vehicle

---

1. The trial court made the following finding with regard to when coercion on the part of the officers began:

 "With regard to the search, the thing that is critical in the consideration of this matter is the time, in the Court's mind, is the time at which the officers made the statement that, 'Well,' they would get a search warrant, or left the impression with the defendants that if they didn't consent, they would get a search warrant. The testimony of Officer Williams is that he asked Mr. Grant prior to the opening of the trunk of the car if he objected, or had any objection to him looking in the trunk, if he would consent to that. The Officer's testimony is that Mr. Grant said, 'Yes,' that he could. On the other hand, Mr. Grant testified that he told him, well, he thought that he probably should have a search warrant, he wasn't sure, but Mr. Grant's testimony as to specifically when this conversation occurred, whether it was before, whether it was after the trunk was opened, and the chronology of other circumstances was rather, rather fuzzy.

 "The Court finds that at that point officer Williams was given a voluntary consent to open the trunk of the vehicle. . . . ."

 The court's characterization of the testimony is accurate.

was valid and that after the officers smelled the marijuana, there was probable cause to search the footlockers. The majority today hold that the plain smell of marijuana emanating from a vehicle is insufficient probable cause for a search of that vehicle absent a foundation as to the officers' expertise. In light of the cases, some not indicating any expertise whatsoever, holding that the smell of marijuana, both burned and unburned, is sufficient probable cause, it is incumbent upon the defendant to object below to an officer's characterization of what he smells as marijuana in order to be heard to complain that "plain smell" is insufficient probable cause. See *United States v. Bowman*, 487 F.2d 1229 (10th Cir. 1973); *United States v. McCormick*, 468 F.2d 68 (10th Cir. 1972); *United States v. Barron*, 472 F.2d 1215 (9th Cir. 1973); *United States v. Sigal*, 500 F.2d 1118 (10th Cir. 1974); *Porter v. State*, 302 So.2d 481 (Fla.Ct.App.1974); *People v. Erb*, 128 Ill.App.2d 126, 261 N. E.2d 431 (1970); *Culpepper v. State*, 132 Ga.App. 733, 209 S.E.2d 18 (1974); *In re S.E.B.*, 514 S.W.2d 948 (Tex.Civ.App. 1974); *Rose v. City of Enterprise*, 52 Ala. App. 437, 293 So.2d 862 (1974); *Ferguson v. State*, 520 P.2d 819 (Okl.1974); *State v. Romanto*, 190 Neb. 825, 212 N.W.2d 641 (1973); *People v. Chestnut*, 43 A.D.2d 260, 351 N.Y.S.2d 26 (1974). Such was not done in the instant case. In fact, the question of "plain smell" was never mentioned throughout the entire proceedings. The whole case was litigated from the perspective of whether or not there was a valid consent to the search.

In addition, the majority state that there is nothing in the record with regard to the officers' experience with marijuana. I would point out that the defendant instigated a stipulation being entered into the record with regard to the notoriety of marijuana arrests on the highway near Tucumcari.[2] As part of the stipulation, the assistant district attorney submitted that considerable emphasis was placed on education of the officers with regard to these matters. In sum, this is not an appropriate case to review defendants' contention that the "plain smell" of marijuana is insufficient to give state officers probable cause to search vehicles on the highways.

*Consent Searches*

The majority hold that "police officers cannot just ask anyone for permission to search their effects." There must be a proper reason to do so. First, the record supports that the request was reasonable in the instant case. Second, I believe the law, as it stood before today, allowed such a request even if it was unreasonable.

Viewing the record in the light most favorable to the admission of the evidence, we have the following findings: (1) defendant's car was stopped at a roadblock for a routine license and registration check, (2) defendant Grant produced an Arizona driver's license and a registration indicating ownership of the vehicle in one Estes of Connecticut, (3) the officer suspected that the vehicle might be stolen, (4) one officer went to check the registration on the national computer network, (5) the computer was not operating, (6) another officer asked defendant what he had in the trunk, to which the defendant replied luggage, (7) that officer asked defendant to open the trunk and (8) the defendant opened the trunk at which point the officer recognized the smell of marijuana.

There is nothing unreasonable in suspecting that a vehicle registered to one other than the driver may be stolen.[3] The officers believed that if there were items in the trunk that the defendants could not identify or if the spare tire and jack were missing, their suspicions would be somewhat confirmed. Conversely, if the de-

---

2. While no statistics were mentioned in the stipulation the New Mexico State Police Annual Report to the Governor, page 33, indicates that 8,660 pounds of marijuana were confiscated in the Tucumcari area during 1974.

3. New Mexico State Police Annual Report, supra, page 63 indicates that in New Mexico alone there was a motor vehicle theft every two hours and 33 minutes or 3,000 plus auto thefts in 1973.

fendants could identify the contents of the car, and if the spare tire apparatus was present, the officers' suspicions may have been dispelled and they may have released the defendants. In my view, this procedure is as reasonable, given the circumstances of this case, as that which we approved in *State v. Lewis*, 80 N.M. 274, 454 P.2d 360 (Ct.App.1969), upon which the majority rely.

Even if it is unreasonable to request that the trunk be opened, it is important to keep in mind that nothing that happened was against the defendant's will until after the trunk was opened and probable cause was established. The officers did not force the defendant to do anything nor did they in any way force themselves into defendant's effects. Compare *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). The officers made an exploratory request and the defendant voluntarily acceded to it.

The majority today hold that such an exploratory request is unlawful. The majority imply that the officers must have within their knowledge facts approaching probable cause in order for such a request to be lawful. I can find nothing in either the *Terry* case, the *Sibron* case or the *Lewis* case to support this position. In fact, to the contrary, the Supreme Court noted in the *Terry* case that:

". . . Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred. We cannot tell with any certainty upon this record whether any such 'seizure' took place here prior to Officer McFadden's initiation of physical contact for purposes of searching Terry for weapons, and we thus may assume that up to that point no intrusion upon constitutionally protected rights had occurred."

The upshot of today's decision is to virtually nullify the doctrine of consent searches. The consent justification for searches is only used when the facts and circumstances surrounding the case indicate that the officers did not have probable cause to search. To hold that an officer must have probable cause to even request a person's consent to search is to abolish consent searches entirely.

Yet searches upon a valid and voluntary consent have long been a part of our law. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The Supreme Court in the *Schneckloth* case pointed out that consent searches serve a useful purpose in our law, not only in the solution and prosecution of crime but also as insurance that a wholly innocent person is not wrongly charged with a criminal offense. To my mind the Supreme Court omitted the most compelling reason to allow consent searches and that is respect for the autonomy of our citizens.

Today's decision places law enforcement officers at their peril to request that anyone consent to a search of his effects. To insure the admissibility of any subsequently discovered evidence, it would be good practice for an officer who believes he has probable cause to search to obtain a warrant. However, a suspect, who, in fact, has nothing to hide will often want to consent to an intrusion into his privacy in order to clear himself immediately of suspicion. The majority decision may not allow the innocent person the liberty of clearing himself at the scene of the investigation. Perhaps this is the most substantial justification for allowing consent searches, i. e. respect for the autonomy of the innocent suspect who the authorities have probable cause to believe committed the crime. Unable to consent to a search which would establish his innocence, he would be detained until formal procedures were completed before he could be released.

To the instant officers, Mr. Grant was under suspicion of possessing a stolen au-

tomobile. They asked what he had in the trunk, to which he replied luggage. Perhaps be believed that if he allowed them to see the luggage, they would let him be on his way. Such should be his right. Needless to say, he did not count on them smelling the marijuana. But there is no constitutional protection against the adverse consequences of an effort to clear oneself. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 564 (1971). The purpose of the Fourth Amendment to the United States Constitution is not to protect people from their own foolishness, but rather to protect people from arbitrary and unreasonable police conduct. I see nothing unreasonable in allowing the police an exploratory request and then leaving it up to the citizen to either protect or not protect himself *as he so desires.* Were there any hint of threats or force or show of authority from the trial court's findings, I would feel otherwise. There being none, I would affirm Mr. Grant's conviction.